**LEO M. BERTAGNOLE, INC., a Corporation, Bertagnole Investment Company Limited Partnership, (Substituted), Plaintiffs and Appellants,**

v.

**PINE MEADOW RANCHES, a Corporation, et al., Defendants and Respondents.**

No. 16900.

Supreme Court of Utah.

Dec. 31, 1981.

R. C. Skeen and E. J. Skeen, Salt Lake City, for plaintiffs and appellants.

Richard H. Nebeker, Stanley S. Adams, Salt Lake City, for defendants and respondents.

OAKS, Justice:

This is an action to quiet title to a section of real property. Defendant contended, and the trial court decreed, that plaintiffs' title was subject to a roadway dedicated by plaintiffs to the public pursuant to U.C.A., 1953, § 27–12–89. The questions plaintiffs raise on appeal are (1) whether such a dedication occurred, and (2) if so, the appropriate width of the dedicated roadway.

Interstate 80 follows Silver Creek Canyon from Kimball Junction into Wanship. Where the highway passes the mouth of Tollgate Canyon, there is an overpass structure with access ramps. The freeway off-

ramp leads to a dirt road extending in a northerly and westerly direction approximately 7½ miles up Tollgate Canyon and providing access to an area of 15 to 20 square miles. The first approximately 500 feet of that road crosses plaintiffs' property.

Use of the road up Tollgate Canyon, including the segment crossing plaintiffs' property, is traceable back to 1915. Often referred to as a "two-rut road," it was used by various sheepmen to trail sheep (two to three thousand head) and to transport sheep camps by wagon, truck, and jeep. Some time before 1949, both the telephone company and the gas company used the road to transport heavy equipment to locations where they buried utility lines. From the 1950s, the road was used extensively by hunters (one witness testified to seeing 40 to 50 hunters' vehicles in a single year), church groups, fishermen, campers, picnickers, and, in the words of one witness, "more lovers . . . than you can imagine." The road provides access to a test well drilled by an oil company in 1977 and terminates at a television transmitter site.

Witnesses testified to the existence of a fence ("a vestige of one" in 1940) and "a relic of a gate" across the mouth of Tollgate Canyon.[1] There was some suggestion that the route of the road was altered to avoid a gate. Another witness testified he had used the road every year since 1959 and had never encountered a gate.

In 1970, Brent Jensen, a defendant, bought acreage north of Tollgate Canyon for development purposes. By that time, the road was passable by car and had a wearing surface of 12 to 13 feet. Jensen and others continued to improve the road by grading, cleaning bar ditches, and the like. Jensen testified that he had traveled the road over a thousand times, that he was never denied access, and that up until shortly before this action was commenced he was never told by plaintiffs that the road was not public.

By January 1, 1975, 380 mountain lots had been sold in areas served by Tollgate Road, including Jensen's Forest Meadow Ranch and Pine Meadow Ranch subdivisions. By the time of trial (November, 1979), approximately 500 lots had been sold and 120 cabins constructed. By one estimate, plaintiffs' portion of Tollgate Road provides access to over 800 landowners and 15 square miles of land.

In August, 1974, a short time after they had become aware of the development of the subdivisions and the use of Tollgate Road as an access, plaintiffs commenced this action to quiet title to Section 35, Township 1 North, Range 4 East, Salt Lake Base & Meridian, in Summit County, excluding the existing Interstate 80, rights-of-way owned by the state of Utah and Union Pacific Railroad, and other rights-of-way of record, but including approximately 500 feet of Tollgate Canyon Road. Defendants counterclaimed, alleging that the road up Tollgate Canyon had continuously existed for over 60 years and that it must be deemed a public highway by dedication.

After personally viewing the property at issue, the district court found "by clear and convincing evidence" that there had been continuous, uninterrupted use of the road across plaintiffs' land commencing as early as 1915, and that the width of the right-of-way which is reasonably necessary for such a public road is 30 feet.

At the heart of this controversy is U.C.A., 1953, § 27–12–89, which reads in full: "A highway shall be deemed to have been dedicated and abandoned to the use of the public when it has been continuously used as a public thoroughfare for a period of 10 years." The language of this provision has remained unchanged since 1898. R.S. 1898, § 1115.

Plaintiffs insist that the district court could not have found that they had dedicated a highway to the public because the intent of the plaintiffs to dedicate the

---

1. There was never a tollgate across the road up Tollgate Canyon. This canyon received its name from a tollgate across Silver Creek

Road—the predecessor to State Highway 30 and later Interstate Highway 80—near the mouth of this canyon.

road to public use was not shown by clear and convincing evidence. They argue that "mere acquiescence in the use of the land by the public" does not establish this intent. Such is not the law. There is no need to prove the landowner's intent. As this Court unanimously held in *Thurman v. Byram*, Utah, 626 P.2d 447, 449 (1981):

> The determination that a roadway has been continuously used by members of the general public for at least 10 years is the sole requirement for it to become a public road. It is not necessary to prove the owner's intent to offer the road to the public as contended by defendants. Section 27–12–89 deems a dedication to the public as a matter of law when the required public use is established.

■ Without assigning specific error, plaintiffs argue throughout their brief that the district court's finding of a highway by dedication is unsupported by the evidence. Thus, plaintiffs stress that in cases of this type "[t]he presumption is in favor of the property owner; and the burden of establishing public use for the required period of time is on those claiming it." *Bonner v. Sudbury*, 18 Utah 2d 140, 143, 417 P.2d 646, 648 (1966). This is a correct statement of the applicable presumption at trial. On appeal, however, "it is our duty to analyze the evidence and whatever reasonable inferences may be drawn therefrom in the light most favorable to the findings and judgment." 18 Utah 2d at 142, 417 P.2d at 647. Since a claim of dedication of a public road is equitable, *Conner v. Heaton*, 205 Ark. 269, 168 S.W.2d 399 (1943), the trial court's findings on this issue will not be overturned unless the evidence clearly preponderates against them. *Jensen v. Brown*, Utah, 639 P.2d 150 (1981); *Utah County v. Baxter*, Utah, 635 P.2d 61 (1981). In the instant case, our review of the record discloses substantial evidence supporting the district court's findings.

■ Plaintiffs also contend on appeal that the district court's finding that the dedicated public highway is 30 feet in width is unsupported by evidence. Plaintiffs object that although the findings of fact, conclusions of law, and judgment and decree show the width as 30 feet, the district court's memorandum decision specifies the width of the roadway as 15 feet. While the memorandum decision may be useful to clarify the findings, *Sprague v. Boyles Bros. Drilling Co.*, 4 Utah 2d 344, 294 P.2d 689 (1956), it does not take precedence over the findings, conclusions, and decree, which comprise the decision of the district court. *Stevens & Wallis v. Golden Porphyry Mines Co.*, 81 Utah 414, 18 P.2d 903 (1933). In the event of a discrepancy, the findings, conclusions, and decree control and are viewed by this Court as binding. *Thompson v. Anderson*, 107 Utah 331, 153 P.2d 665 (1944). Consequently, what is before this Court on this appeal is the 30-foot figure.

Plaintiffs point out that the only evidence in the record specifically relating to the width of the roadway was Brent Jensen's testimony that in 1970 the road was passable by car and had a "wearing surface" of 12 or 13 feet. However, the width of a dedicated highway is not limited to the beaten path. *Blonquist v. Blonquist*, 30 Utah 2d 234, 516 P.2d 343 (1973). In *Jeremy v. Bertagnole*, 101 Utah 1, 9, 116 P.2d 420, 424 (1941), we stated:

> A bridle path abandoned to the public may not be expanded, by court decree, into a boulevard. On the other hand, the implied dedication of a roadway to automobile traffic is the dedication of a roadway of sufficient width for safe and convenient use thereof by such traffic.

Even without considering access to subdivisions—a use to which the road was put for less than the 10-year statutory period—30 feet cannot be said to be unreasonably wide or unsupported by the evidence. The evidence of the use of the road by large flocks of sheep, sheep camps, trucks, jeeps, heavy equipment, hunters, fishermen, picnickers, campers, and sightseers supports the finding of a 30-foot width. Furthermore, the district judge determined the width of the public highway after a personal on-site inspection of the property, a fact adding weight to his finding. A 30-foot roadway is

modest in comparison to those found by this Court in previous cases involving roads in mountain canyons. *Blonquist v. Blonquist, supra* (44 feet); *Jeremy v. Bertagnole, supra* (60 feet in part, 82.5 feet for the remaining portion); *Sullivan v. Condas,* 76 Utah 585, 290 P. 954 (1930) (49.5 feet); *Lindsay Land & Live Stock Co. v. Churnos,* 75 Utah 384, 285 P. 646 (1929) (100 feet).

The district court's judgment is affirmed. Costs to respondent.

HALL, C. J., HOWE and STEWART, JJ., and J. ROBERT BULLOCK, District Judge, concur.