DRAPER CITY, a municipal corporation and political subdivision of the State of Utah; Jack A. Garfield, an individual; Lena Pignanelli, an individual; Donald T. Marden, an individual; Draper Recreational Trails Association, an association; and Robert and Sharon Patterson dba Antique Acres, Plaintiffs and Appellees,

and

Henning and Geraldine B. Anderson; Arthur Burr; Corporation of the Presiding Bishopric of the Church of Jesus Christ of Latter-day Saints; Draper Irrigation Company; Estes Homes; Roberta M. and Grant E. Kirkham; Little Willow Irrigation Company; Metropolitan Water District of Salt Lake City; Edward E. and Caroline B. Morgan; Town of Riverton; Traverse Associates; Utah Valley Land; and Duane B. and Shaunna M. Woodmansee, Plaintiffs by Election and Appellees,

v.

ESTATE OF Fannie BERNARDO, deceased; Paul L. Bernardo, an individual and personal representative of the Estate of Fannie Bernardo; Jimmy T. Bernardo, an individual; John A. Bernardo, an individual; and John Does 1–20, Defendants and Appellants,

and

Randy H. and Joelene D. Charlton; Harold A. and Mary G. Daw; Earl J. and Vaunnal Garfield; and Ruth Gordon, Defendants by Election and Appellants,

and

Corner Canyon Water Company, Intervening Defendant.

No. 930502.

Supreme Court of Utah.

Jan. 19, 1995.

Michael Z. Hayes, Lisa G. Romney, Salt Lake City, for appellees.

Thomas D. Walk, Salt Lake City, for LDS Church.

David L. Church, Salt Lake City, for Riverton.

Joseph Novak, Salt Lake City, for Metropolitan Water Dist. of Salt Lake City.

Dean W. Sheffield, Salt Lake City, for appellants.

HOWE, Justice:

Draper City and several individuals commenced this action to have what is known as the Lower Corner Canyon Road, which lies within the City's limits, declared to have been dedicated and abandoned to the use of the public pursuant to Utah Code Ann. § 27–12–89 (1989) on the ground that it had been continuously used as a public thoroughfare for a period of ten years. Defendant Paul L. Bernardo, personal representative of the Estate of Fannie Bernardo, Jimmy T. Bernardo, and John A. Bernardo, along with thirty others, own property adjacent to the road, which is 14,000 lineal feet, or 2.65 miles, long. The trial court ordered each of the other property owners whose property "adjoined, abutted, or was crossed by" the road to join the action as either defendants or plaintiffs. Each owner consequently joined either as a plaintiff by election or as a defendant by election.

Both sides moved for summary judgment. The trial court granted summary judgment in favor of plaintiffs and plaintiffs by election. Defendants and defendants by·election appeal.

## FACTS

The trial court determined that there were no disputed issues of material fact and entered findings of fact to the following effect: In the southeast corner of the Salt Lake Valley in Draper City lies Corner Canyon. Since at least 1910, there has been a narrow and unpaved Lower Corner Canyon Road that connects with Upper Corner Canyon Road, which leads up over a mountain crest and down to the city of Alpine, Utah, a total distance of about nine miles. People used Lower Corner Canyon Road during the 1920s to mine and haul silica from a pit in the area. During the 1920s and 1930s, ranchers used the road to transport and graze livestock. During the depression years of the 1930s, people used the road to collect firewood in the canyon area. In the 1940s, the Metropolitan Water District of Salt Lake City constructed an aqueduct and tunnel in the Corner Canyon area and used the road to transport equipment and laborers up the canyon. Employees of the District have continued to use the road to perform maintenance checks and to read meters and other measuring devices. In the 1950s, a natural gas pipeline was installed which crosses the road in several places, and the road was used to access this pipeline. Through the 1950s, '60s, and '70s, Salt Lake County graded the road and added road base when needed. Critical to this case, the court found that the road has been used by the general public, including boy scout groups, for recreational hiking, camping, horseback riding, and picnicking from the 1920s to the present time and for riding motorized vehicles, including cars, trucks, 4 × 4s, motorcycles, and all-terrain vehicles, since the 1930s.

## ANALYSIS

Plaintiffs brought their action pursuant to section 27–12–89, which provides:

A highway shall be deemed to have been dedicated and abandoned to the use of the public when it has been continuously used as a public thoroughfare for a period of ten years.

Utah Code Ann. § 27–12–89 (1989).

■ It is not necessary to prove that the owner of the private road had the intent to offer the road to the public. *Thurman v. Byram,* 626 P.2d 447, 449 (Utah 1981). Rather, under section 27–12–89, the owner's intent may be inferred by the mere acquiescence in allowing the public to use the road. *Id.; Leo M. Bertagnole, Inc. v. Pine Meadow Ranches,* 639 P.2d 211, 213 (Utah 1981).

■ The law does not lightly allow the transfer of property from private to public use. The public's taking of property in such circumstances as this case presents requires proof of dedication by clear and convincing evidence. *Thomson v. Condas,* 27 Utah 2d 129, 130, 493 P.2d 639, 639 (1972); *Petersen v. Combe,* 20 Utah 2d 376, 377–78, 438 P.2d 545, 548 (1968). This higher standard of proof is demanded since the ownership of property should be granted a high degree of sanctity and respect. *Petersen,* 438 P.2d at 548–49 (Crockett, C.J., dissenting). In addition, " '[t]he presumption is in favor of the property owner; and the burden of establishing public use for the required period of time is on those claiming it.' " *Bertagnole,* 639 P.2d at 213 (quoting *Bonner v. Sudbury,* 18 Utah 2d 140, 143, 417 P.2d 646, 648 (1966)). Clearly, plaintiffs bear the burden of demonstrating dedication to the public of Lower Corner Canyon Road.

■ Summary judgment is proper only when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Jackson v. Dabney,* 645 P.2d 613, 615 (Utah 1982); Utah R.Civ.P. 56(c). We have carefully reviewed the many affidavits filed by the parties in support of and in opposition to the motions for summary judgment. Our analysis reveals a number of disputed issues of material fact. For discussion purposes, we will discuss use of the road prior to 1960 and then use after that year.

The main thrust of the affidavits filed by defendants is that people using the road as described in the court's findings of fact prior to about 1960 did so with the permission of the landowners over whose property the road coursed. For example, the people using the road during the 1920s and the 1930s to extract silica from a pit, to gather firewood, and to transport and graze cattle and sheep were either owners of land adjacent to the road, their employees, or people to whom permission had been given by the landowners. Access to the silica pit required use of only the lower part of the road. The general public did not use the road for hiking, picnicking, camping, horseback riding, or riding motor vehicles. The road was used for those purposes only by landowners, their family members, and people to whom express permission had been given. Boy scout groups using the road did so with permission and were ordered off the property when permission had not been given. The Metropolitan Water District of Salt Lake City is the owner of 10.87 acres in Corner Canyon, and its use of the road to reach its property was by permission or "by grant," although a District employee denied that it had a grant to use the road.

■ It is important here to note that our case law has distinguished between use of a road by owners of adjoining property and by the general public. "Such property owners cannot be considered members of the public generally, as that term generally is used in dedication by user statutes." *Petersen,* 438 P.2d at 546. This is because adjoining owners may have documentary or prescriptive rights to use the road or their use may be by permission of the owners of the fee of the road. In *Thompson v. Nelson,* 2 Utah 2d 340, 345, 273 P.2d 720, 723 (1954), we made this point clear by quoting the following from *Morris v. Blunt,* 49 Utah 243, 251, 161 P. 1127, 1131 (1916):

Under this statute the highway, even though it be over privately owned ground, will be deemed dedicated or abandoned to the public use when the public has continuously used it as a thoroughfare for a period of 10 years, *but such use must be by the public. Use under private right is not sufficient.*

Although the trial court found that there was no documentary evidence that people using the road had any private right, that finding does not preclude those users from having a right by prescription or that their use was by permission. Thus, we find that there is a material issue of fact as to whether people using the road prior to 1960 were members of the general public whose use could ripen into a public way or whether they were landowners in the area who had either a private right to use the road or permission of the owners over whose land the road coursed.

We turn now to use of the road since 1960. The trial court found that since that year (and prior thereto), members of the general public had used the road for hiking, camping, horseback riding, and riding motorized vehicles. This finding was based on affidavits filed by plaintiffs and by people who lived near the road and had opportunity to observe use of the road by the public. One affiant, Ronald E. Allen, averred that he had observed people using the road for recreational purposes in the 1950s and 1960s. These users are not identified, and the affidavit is silent as to whether they had permission to use the road. He avers only that *he* was not denied access to the road until 1990. The same infirmities exist with the affidavits of Marlon Parkin and Alan Summerhays. Parkin averred that he had seen many people use the road for recreational purposes since 1966. Summerhays averred that from 1960 to the present time, there has been continual use of the road by people for recreational purposes. The affidavits of all three affiants are silent as to whether these recreational users used the full length of the road (2.65 miles) or whether they traveled only part way to reach their desired recreational destinations.

Defendants filed several affidavits which controverted the findings of fact and the averments made in plaintiffs' affidavits. These affiants generally acknowledged the following: Since the early 1960s, people who may properly be called members of the general public have used or attempted to use the road for recreational purposes or to reach private property on which they would recreate; these people were trespassers; some of them were stopped and asked to leave;

sometimes, some of them were given permission to remain; owners posted "no trespassing" signs at the entrance to the road; on occasions, they have called the county sheriff or the Draper police to remove trespassers; and in the 1970s and 1980s, they blocked the road through means which varied from digging trenches to stacking concrete blocks and to piling dirt, rocks, and snow to prevent trespassing. It is unclear how successful these attempts at blocking were. Finally, in 1990, a gate was erected at the entrance to the road.

The affidavits filed by defendants also disputed the extent of the road which may have been traversed by these recreational users. The affiants averred that for the past twenty to twenty-five years, the road above the silica pit has been impassable by any vehicle because the road has been covered with vegetation, undergrowth, rocks, mud, and dirt. One affiant described this portion of the road as "no more than several unconnected paths." An engineer's inspection of the road made at the request of Draper City disclosed that an 800–foot section of the road was impassable due to a 4–foot gully. Because of this condition, a vehicle could not be driven to the end of the lower road where it connects with the upper road.

Plaintiffs counter that any possible obstruction of the road by defendants came too late since there had been public use for nearly sixty years prior to any obstruction attempts. However, neither they, the trial court in its findings, nor we have been able to pinpoint any ten-year period during which public use, as we have defined it, of the full length of the road is undisputed. Continuous use for ten years is required by section 27–12–89.

In granting summary judgment, it is apparent that the trial court gave more weight to some affidavits than to others. This was inappropriate at this stage of the litigation. On a motion for summary judgment, a trial court should not weigh disputed evidence, and its sole inquiry should be whether material issues of fact exist. *W.M. Barnes Co. v. Sohio Nat'l Resources Co.*, 627 P.2d 56, 59 (Utah 1981).

It is not the purpose of the summary judgment procedure to judge the credibility of the averments of parties, or witnesses, or the weight of evidence. Neither is it to deny parties the right to a trial to resolve disputed issues of fact. Its purpose is to eliminate the time, trouble and expense of trial when upon any view taken of the facts as asserted by the party ruled against, he would not be entitled to prevail.

*Holbrook Co. v. Adams*, 542 P.2d 191, 193 (Utah 1975). We have additionally held that "it only takes one sworn statement under oath to dispute the averments on the other side of the controversy and create an issue of fact." *Id.*

■ Due to conflicting sworn statements, clouds of doubt yet remain over the possible dedication of the road to the public. At this initial stage, plaintiffs have fallen short of presenting undisputed evidence which warrants summary judgment in their favor. Their affidavits certainly fail to clearly and convincingly prove their position. *See Petersen*, 438 P.2d at 548. "Summary judgment procedure is generally considered a drastic remedy," *Timm v. Dewsnup*, 851 P.2d 1178, 1181 (Utah 1993), and is appropriate only when the facts are clear and undisputed. We therefore reverse the trial court's conclusion that as a matter of law the road was dedicated to the public. Fact-sensitive cases such as this case do not lend themselves to a determination on summary judgment.

We distinguish the instant case from *Thurman v. Byram*, 626 P.2d at 450, where we upheld the dedication of a private road to the public under section 27–12–89. In *Thurman*, the general public had never been asked not to use the road, and the county sheriff had not been asked to prevent trespassing. *Id.* at 449. In contrast, there are averments in the instant case that trespassers were directed to leave and that the county sheriff and the Draper City police were often asked to prevent this illegal activity. In *Thurman*, the road provided the sole access to certain public property, and state and county crews had "assisted in the installation of a bridge in the road." *Id.* That is not the case for Lower Corner Canyon Road. It does not lead to any public property. According to several affiants, the road past the silica pit has been impassable for the past twenty to twenty-five years, making travel over the mountain crest to Alpine no longer possible. In addition, affiants denied that Salt Lake County had ever performed anything but minimal maintenance on the road except on a few isolated occasions. They also averred that Draper City, soon after its incorporation in 1978, affirmatively renounced any responsibility to maintain the road and posted a sign near its entrance to that effect. *Cf. Bertagnole*, 639 P.2d at 212–14 (upholding dedication of road to the public where numerous trespassers had never been ordered off the property and approximately 500 lots and 120 cabins were accessed by the road).

As part of the summary judgment, the trial court also found that "[t]he worn surface of the [road] averages between ten (10) to twenty-five (25) feet." It then concluded, "The reasonable and necessary right of way width for the [road] is thirty (30) feet." Since we hold that summary judgment was improper, we also hold that any legal determination of the necessary and reasonable width of the road was premature. Such a determination depends upon the full adjudication of the relevant facts that will be unearthed at trial. We therefore also reverse the trial court's conclusion that the reasonable and necessary width for Lower Corner Canyon Road is thirty feet.

The summary judgment is reversed, and the case is remanded for further proceedings consistent with this opinion.

ZIMMERMAN, C.J., STEWART, Associate C.J., and DURHAM and RUSSON, JJ., concur.