Marden R. KOHLER and Joy J. Kohler, Plaintiffs, Appellees, and Cross-appellants,

v.

Stephen C. MARTIN, Defendant, Appellant, and Cross-appellee.

No. 950345–CA.

Court of Appeals of Utah.

May 2, 1996.

Robert Felton, Salt Lake City, for Appellant.

A. Dean Jeffs, Jeffs & Jeffs, Provo, for Appellees.

Before ORME, J., DAVIS, Associate P.J., and JACKSON, J.

## OPINION

DAVIS, Associate Presiding Judge:

Stephen C. Martin appeals the trial court's rulings regarding access rights to a ten-foot-wide driveway occupying a portion of his property. We affirm in part, reverse in part, and remand in part.

## FACTS

The property in question is a narrow strip of land approximately 56 feet wide and 277 feet long. A driveway approximately ten feet wide runs through the property and provides access to both the Martin and the Kohler residences. The testimony at trial

was that historically this entire strip of land was regarded and treated as a public roadway (roadway). The roadway once led to a slaughterhouse, a public store, a creamery, a public swimming pool, and was also used for at least twenty-two years by the public as access to a business known as the "Buehler Hot Pots." In addition, witnesses testified that the general public used the roadway for access to property to the north of the Buehler Hot Pots for recreational and agricultural purposes.

Despite its widespread public use and general reputation as a public thoroughfare, the roadway was included in the legal description of a larger parcel of private property to the north of the roadway. This property was purchased by Ferrin and Martha Whitaker in 1956. In 1966, appellee Marden R. Kohler's parents, Reed and Elda Kohler, approached the Whitakers, who were close friends, and advised them that they had an interest in buying the lot just south of theirs. Because the lot was landlocked, Reed and Elda Kohler asked for permission to use the driveway improved by the Whitakers to access the home they intended to construct. This permission was granted orally, and Reed and Elda Kohler purchased the lot and built the home.

After the Kohlers finished the home and moved in, the Whitakers requested payment from the Kohlers for an "ownership" interest in the driveway and for driveway maintenance. This money was never paid. Nevertheless, the Kohlers continued to use the driveway and to participate in the maintenance of the property surrounding the driveway.

In 1981, the Whitakers sold their property to Karen and Dick Bassett. The Bassetts were told by the Whitakers that Elda Kohler (Reed Kohler had since died) had permission to use the driveway while she was alive and then permission would terminate.

Martin purchased the property from the Bassetts in 1987. Prior to purchasing the property, Martin was told by the Bassetts that Elda Kohler had the right to use the driveway during her life only. After the purchase, Martin approached Elda regarding his understanding of use of the driveway, and

Elda's response was noncommittal. In a subsequent conversation, Elda again refused to address the issue, and referred Martin to her son, Marden. Martin contacted Marden, and Marden expressed his understanding that the driveway was a public road, and that Martin had no right to gate the entrance to the driveway. After Elda Kohler died in 1992, Martin installed a locked gate at the entrance to the driveway. Marden and Joy Kohler subsequently brought this action, claiming that they owned an easement to the driveway and that the driveway was a public thoroughfare.

After a bench trial, the trial court found by clear and convincing evidence that:

the roadway adjacent to Plaintiffs' real property and extending northward from the intersection of Second North Street and Second West Street of Midway City to a line extended westerly from the north side of Plaintiffs' asphalt driveway where it enters the Plaintiffs' property was historically and continuously used by the general public as a public thoroughfare for far in excess of a 10 year period of time. The width of the thoroughfare area extended from fences along its west side and east side which are still in their historic locations. The entire thoroughfare area was used by the general public both for passage of people and animals and for the travel and parking of vehicles. The use of the thoroughfare by the public was not only in connection with the use of the land now owned by the Plaintiffs, but also for access by the public to the lands north of the properties of these parties. The thoroughfare area was always open for the free and unobstructed passage of people and vehicles from its south end northward past the Plaintiffs' land from before 1922 to at least 1948.

Based upon these findings, the court ruled: (1) the roadway on which the driveway was built was a public thoroughfare; (2) the Kohlers "are the owners of an easement and right of way over and upon the roadway"; and (3) the Kohlers "also own a prescriptive easement for the permanent and unrestricted use" of the roadway. Martin appeals.

## ISSUES AND STANDARD OF REVIEW

Martin raises numerous issues for review.[1] However, we need reach only two: whether the trial court erred in ruling that the roadway was a dedicated, public thoroughfare pursuant to Utah Code Ann. § 27–12–89 (1995); and, if a public thoroughfare was created, whether the trial court erred in ruling that the entire strip of property was dedicated to the public. Martin does not challenge the factual underpinnings for the trial court's rulings. Instead, he argues the trial court misapplied the law, and urges this court to review the trial court's legal conclusions for correctness. *See Carrier v. Pro-Tech Restoration*, 909 P.2d 271, 272 (Utah App.1995).

Generally speaking, Martin is correct that "the effect of a given set of facts is a question of law and, therefore, one on which an appellate court owes no deference to a trial court's determination." *State v. Pena*, 869 P.2d 932, 936 (Utah 1994). However,

> the critical question, and one of some subtlety, arises only after we have said that an issue is a question of law and no deference is owed the trial court. At this point, we must attempt to determine when the articulated legal rule to be applied to a set of facts—a rule that we establish without deference to the trial courts—embodies a de facto grant of discretion which permits the trial court to reach one of several possible conclusions about the legal effect of a particular set of facts without risking reversal.

*Id.* at 937.

■ The court in *Pena* concluded that a "spectrum of discretion exists and that the closeness of appellate review of the application of law to fact actually runs the entire length of this spectrum." *Id.* at 938. When the decisions are more fact-dependent, or when the credibility of the witnesses has a strong bearing on the decision, broader discretion is generally granted to the trial court. *Id.* At the other end of the spectrum, resolution of such issues as "whether a 'municipal

function' has been delegated to a state commission in violation of article VI, section 28 of the Utah Constitution," is subject to de novo review as more of a policy determination than a factual issue. *Id.*

We must determine in this case whether the ruling that a public thoroughfare exists should be reviewed with some discretion granted to the trial court. The Utah Supreme Court has provided three criteria for assessing when some degree of deference should be given to the trial court's application of the law to the facts. These are:

> (i) when the facts to which the legal rule is to be applied are so complex and varying that no rule adequately addressing the relevance of all these facts can be spelled out; (ii) when the situation to which the legal principle is to be applied is sufficiently new to the courts that appellate judges are unable to anticipate and articulate definitively what factors should be outcome determinative; and (iii) when the trial judge has observed "facts," such as a witness's appearance and demeanor, relevant to the application of the law that cannot be adequately reflected in the record available to appellate courts.

*Id.* at 939.

■ Consideration of these criteria persuades us that some degree of discretion is appropriately accorded to the trial court in cases determining whether a public thoroughfare exists. While "ten years of public use" seems a clear rule of law, these cases, by their very nature, involve reconstruction of historical facts concerning timing, nature, and the extent of public usage. Usually, as here, witnesses are required to dredge the recesses of their minds for aged memories. Accordingly, this kind of testimony requires the trial court to do some weighing and assessing of the credibility of witnesses. In short, the trial court is in the best position to determine whether the particular set of circumstances in question merits a conclusion

---

1. We do not address Martin's arguments regarding joinder and the alleged violation of Article I, section 22 of the Utah Constitution. Martin has not demonstrated that the trial court abused its discretion in failing to grant the motion for join-

der of Midway City. Further, the argument regarding the unconstitutional taking is entirely without merit and need not be addressed. *See State v. Allen*, 839 P.2d 291, 303 (Utah 1992).

that the property has been dedicated or abandoned to public use.

■ We therefore conclude that it is appropriate to review the trial court's ruling that a public thoroughfare was created with some degree of deference to the trial court. "[T]rial courts should be permitted some rein to grapple with the multitude of fact patterns that may constitute a ... [public thoroughfare] determination." *Id.* at 940. However, we require that the dedication of property to the public be proven by clear and convincing evidence. *Draper City v. Estate of Bernardo,* 888 P.2d 1097, 1099 (Utah 1995). "The law does not lightly allow the transfer of property from private to public use." *Id.*

### ANALYSIS

■ The trial court ruled that based upon continuous use by the general public for a period greater than ten years, the roadway leading to the Kohler residence was impliedly dedicated to the public as a public highway. Section 27–12–89 of the Utah Code states, "A highway shall be deemed to have been dedicated and abandoned to the use of the public when it has been continuously used as a public thoroughfare for a period of ten years." Utah Code Ann. § 27–12–89 (1995). Moreover, once a public highway has been established pursuant to section 27–12–89, it remains a public highway unless expressly abandoned by the proper authorities. *Id.* § 27–12–90. "Highway" is defined as "any public road, street, alley, lane, court, place, viaduct, tunnel, culvert, bridge, or structure laid out or erected for public use, or dedicated or abandoned to the public, ... including the entire area within the right-of-way." *Id.* § 27–12–2(6).

Martin does not dispute the evidence of public use of the roadway, but contends that this evidence does not satisfy the requirements of section 27–12–89. Specifically, Martin argues that use of the roadway to access the Buehler Hot Pots does not qualify as "public use" because the Buehler Hot Pots was an adjoining property owner. Further, the public used the roadway as business invitees of Buehler Hot Pots, and it is well established that mere use of the roadway by adjoining property owners (and public invi-

tees thereof) does not create a public thoroughfare. *See Bernardo,* 888 P.2d at 1099; *Petersen v. Combe,* 20 Utah 2d 376, 438 P.2d 545, 546 (1968); *Thompson v. Nelson,* 2 Utah 2d 340, 273 P.2d 720, 723 (Utah 1954) (" 'The mere use by the public of a private alley *in common with the owners of the alley* does not show a dedication thereof to public use, or vest any right in the public to the way.' " (citations omitted) (emphasis added)). Martin also contends that other use of the roadway was sporadic and would not independently support a ruling of public dedication.

Martin correctly states the law regarding use of property by adjoining land owners. As our supreme court recently stated,

> It is important here to note that our case law has distinguished between use of a road by owners of adjoining property and by the general public. "Such property owners cannot be considered members of the public generally, as that term generally is used in dedication by user statutes." *Petersen,* 438 P.2d at 546. This is because adjoining owners may have documentary or prescriptive rights to use the road or their use may be by permission of the owners of the fee of the road.

*Bernardo,* 888 P.2d at 1099. The Buehler Hot Pots was an adjoining landowner; hence the rule excluding evidence of such use has application here. Nevertheless, there was abundant, unrebutted evidence in support of the trial court's conclusion that the roadway was used by the general public for purposes other than access to the Buehler Hot Pots for a period far in excess of the requisite ten years. The evidence was that the roadway was used continuously for recreational purposes, for agricultural purposes, and for access to other business activities. In addition, the Probst family, owners of the roadway from approximately 1939 to 1956, always considered the roadway to be public, did not fence off the roadway, did not post any signs, and in general made no attempts to limit the passage of the public. Other individuals also testified that it was their opinion, and the general public opinion, that the roadway was public. In fact, when the Whitakers installed a gate blocking the roadway in 1970, adjoin-

ing landowners hired an attorney to request that the roadway be reopened because it had been recognized as a public thoroughfare for over fifty years. The Whitakers subsequently removed the gate. Thus, clear and convincing evidence supports the trial court's ruling that the roadway was dedicated or abandoned to the public. *See Bonner v. Sudbury*, 18 Utah 2d 140, 417 P.2d 646, 648 (Utah 1966) (noting "all of the facts should be considered together; and where there is dispute about whether a public use is established, determination of the facts and resolution of the issue is primarily the responsibility of the trial court").

■ Because we affirm the trial court's ruling that a public thoroughfare had been created, Martin's argument that creation of a private right in a public thoroughfare cannot occur is well taken. "A prescriptive right is in conflict with the dedication of land to the use of the general public." *Thurman v. Byram*, 626 P.2d 447, 449 (Utah 1981); *see also Thornley Land & Livestock Co. v. Morgan Bros. Land & Livestock Co.*, 81 Utah 317, 17 P.2d 826, 827 (1932) ("[T]he use by individual persons in common with the public generally is regarded as permissive, and by such common use no individual person can acquire a right by prescription as against the owner of the fee."). We therefore reverse the trial court's rulings that the Kohlers own "an easement and a right of way over and upon the roadway," that the doctrines of promissory estoppel and equity prevent Martin from denying the existence of such an easement, and that the Kohlers had a prescriptive easement for use of the roadway.

■ Finally, Martin argues that even if a public thoroughfare was created, the trial court erred in failing to assess the reasonable and necessary width of the roadway. We agree. The trial court found that the public thoroughfare extended the full width of the land between the east and west fences. "Generally, the width of a public road is determined according to what is reasonable and necessary under all the facts and circumstances." *Memmott v. Anderson*, 642 P.2d 750, 754 (Utah 1982). Because the trial court

failed to make this determination, we remand for this limited purpose.[2]

### CONCLUSION

We affirm the trial court's ruling that the roadway was, by clear and convincing evidence, dedicated to the public. We also affirm the ruling that Martin is required to remove the gate preventing access to this public road. We reverse the court's rulings concerning the existence of easements to the roadway because they are inconsistent with the ruling that the roadway is public. Finally, we remand for a determination of the necessary and reasonable width of this public road.

JACKSON, J., concurs.

ORME, P.J., concurs in the result only.

---

2. Because we affirm the trial court's finding of a public thoroughfare, we also affirm the trial court's order requiring Martin to remove the gate obstructing this thoroughfare.