2009 UT App 119

**JENNINGS INVESTMENT, LC;** Gilbert Jennings; Mansfield Jennings; Conrad Bowler; Lewis J. Bowler; Dorcus N. Bowler; H. Val Hafen; Randy Bowler; Gai Bowler; Troy Bowler; Kerrie Bowler; and John Bowler, Plaintiffs and Appellees,

v.

**DIXIE RIDING CLUB, INC.,** a Utah corporation; and John Does 1–20, Defendants and Appellant.

No. 20060631–CA.

Court of Appeals of Utah.

April 30, 2009.

Robert J. Dale, Bradley L. Tilt, and Matthew B. Hutchinson, Salt Lake City, for Appellant.

V. Lowry Snow, Lewis P. Reece, and Duane L. Ostler, St. George, for Appellees.

Before Judges GREENWOOD, THORNE, and BENCH.

## OPINION

THORNE, Associate Presiding Judge:

¶ 1 Defendant Dixie Riding Club, Inc. (Dixie) appeals the district court's summary judgment rulings. The district court denied Dixie's motion for partial summary judgment and instead granted Plaintiffs Jennings Investment, LC; Gilbert Jennings; Mansfield Jennings; Conrad Bowler; Lewis J. and Dorcus N. Bowler; H. Val Hafen; Randy and Gai Bowler; Troy and Kerrie Bowler; and John Bowler's motion for summary judgment. We affirm in part and reverse and remand in part.

## BACKGROUND

¶ 2 Dixie owns property in the City of St. George, upon which a road adjacent to an equestrian arena is located and described in the Owners' Dedication Plat as 1020 West X 1050 North Street (the Road). In 1972, before Dixie obtained its ownership of the property, the arena and the Road, as well as the subdivision that was originally part of the property, were annexed into the City of St. George.

¶ 3 In 2003, Plaintiffs filed a complaint against David Welch and John Does seeking a declaratory judgment that the Road had been dedicated and abandoned to public use pursuant to Utah Code section 72–5–104. *See* Utah Code Ann. § 72–5–104 (2001). Plaintiffs later moved to amend their complaint to name Dixie as a Defendant, remove Welch, and add a cause of action for prescriptive easement. The district court granted said motion.

¶ 4 Through prior counsel, Dixie filed a motion for partial summary judgment on Plaintiffs' road dedication claim together with the affidavit of Charles Welch. Plaintiffs responded with a cross-motion for summary judgment with affidavits and memorandum in opposition to Dixie's motion for partial summary judgment. Dixie filed an opposition to Plaintiffs' cross-motion, which included a second affidavit of Welch. Plaintiffs then filed a reply brief arguing that Dixie had failed to controvert Plaintiffs' statement of facts and requesting that the court deem the facts admitted for purposes of summary judgment pursuant to rule 7 of the Utah Rules of Civil Procedure. The district court held a hearing on the parties' summary judgment motions and, thereafter, issued a ruling wherein it deemed Plaintiffs' facts admitted, granted Plaintiffs' motion, and denied Dixie's motion. On March 7, 2006, the district court signed a

decree of dedication for a fifty-foot wide road.

## ISSUES AND STANDARDS OF REVIEW

¶ 5 Dixie appeals from the district court's summary judgment rulings. "We review a district court's grant [or denial] of summary judgment for correctness, affording no deference to the district court." *Bluffdale City v. Smith,* 2007 UT App 25, ¶ 5, 156 P.3d 175. Dixie first argues that the district court erred in its determination that Plaintiffs met their burden to establish dedication of the Road for public use by clear and convincing evidence.[1]

> We review the trial court's legal interpretation of the Dedication Statute for correctness and its factual findings for clear error. But whether the facts of a case satisfy the requirements of the Dedication Statute is a mixed question of fact and law that involves various and complex facts, evidentiary resolutions, and credibility determinations. Thus, we review the trial court's decision regarding whether a public highway has been established under [the Dedication Statute] ... for correctness but grant the court significant discretion in its application of the facts to the statute.

*Town of Leeds v. Prisbrey,* 2008 UT 11, ¶ 5, 179 P.3d 757 (alteration and omission in original) (internal quotation marks and footnotes omitted).

¶ 6 Dixie next argues that the district court abused its discretion when it ruled that all the facts Plaintiffs set forth in their cross-motion for summary judgment were deemed admitted because Dixie failed to comply with rule 7 of the Utah Rules of Civil Procedure. The district court has discretion in requiring compliance with rule 7. *See Bluffdale City,* 2007 UT App 25, ¶ 5, 156 P.3d 175 ("[T]he trial court has discretion in requiring compliance with [rule 7 of the Utah Rules of Civil Procedure]." (second alteration in original) (internal quotation marks omitted)). Thus,

we must determine whether the district court abused its discretion in admitting as uncontroverted the facts Plaintiffs submitted in their cross-motion for summary judgment. *See id.* ¶ 7.

¶ 7 Dixie further asserts that the district court improperly weighed the evidence in granting summary judgment. "On a motion for summary judgment, a trial court should not weigh disputed evidence, and its sole inquiry should be whether material issues of fact exist." *Bear River Mut. Ins. Co. v. Williams,* 2006 UT App 500, ¶ 15, 153 P.3d 798 (internal quotation marks omitted). "In reviewing the trial court's granting of a motion for summary judgment, we view the facts, and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party." *Id.* (internal quotation marks omitted).

¶ 8 Dixie also argues that the district court erred in failing to assess the reasonable and necessary width of the Road after it determined the Road to be a public highway. "Once the district court has made a determination [of width], it will not be disturbed if supported by substantial evidence." *Memmott v. Anderson,* 642 P.2d 750, 754 (Utah 1982).

¶ 9 Lastly, Dixie contends that the City of St. George is a necessary and indispensable party to this action. Dixie asserts that it raised this issue below; however, it does not appear that the district court addressed this issue.

> Generally, we will not consider issues not preserved in the trial court absent plain error or exceptional circumstances. Nevertheless, a party may raise the issue of failure to join an indispensable party at any time in the proceedings, including for the first time on appeal.

*Cassidy v. Salt Lake County Fire Civil Serv. Council,* 1999 UT App 65, ¶ 9, 976 P.2d 607.

---

1. Dixie also asserts, in its Statement of the Issues Presented for Review, that the district court erred in ruling that Plaintiffs have standing to maintain this action. Dixie raised the standing issue in its statement of the issues but does not present a standing argument in its brief. Be-

cause Dixie does nothing more than list standing as an issue, we do not address it further. *See Pixton v. State Farm Mut. Auto. Ins. Co.,* 809 P.2d 746, 751 (Utah Ct.App.1991) ("Generally, where an appellant fails to brief an issue on appeal, the point is waived.").

## ANALYSIS

### I. Dedication of Public Road

¶ 10 Dixie argues that summary judgment was not properly granted in favor of Plaintiffs' road dedication claim because Plaintiffs failed to prove that the Road was used as a public thoroughfare. Under Utah law, "[a] highway is dedicated and abandoned to the use of the public when it has been continuously used as a public thoroughfare for a period of ten years." Utah Code Ann. § 72–5–104(1) (2001).

¶ 11 To satisfy the public thoroughfare element, Plaintiffs must demonstrate proof of (i) passing or travel, (ii) by the public, and (iii) without permission. *See Heber City Corp. v. Simpson*, 942 P.2d 307, 311 (Utah 1997) (listing the three general requirements established by the definition of public thoroughfare and noting the previous abandonment of a fourth requirement). "The public's taking of property in such circumstances ... requires proof of dedication by clear and convincing evidence." *Draper City v. Estate of Bernardo*, 888 P.2d 1097, 1099 (Utah 1995). "In addition, [t]he presumption is in favor of the property owner; and the burden of establishing public use for the required period of time is on those claiming it." *Id.* (alteration in original) (internal quotation marks omitted).

¶ 12 In particular, Dixie asserts that Plaintiffs did not prove by clear and convincing evidence the last two requirements of public thoroughfare, i.e., public use of the Road and the lack of Dixie's permission.

### A. Public Use of the Road

¶ 13 Dixie argues that the district court erred in finding public use of the Road since Plaintiffs' affidavits establish only private use of the Road. Dixie asserts that Plaintiffs' affidavits demonstrate only that *neighboring landowners and their guests* may have used the Road to get from one neighborhood to the next, to visit one of the businesses located adjacent to the Road, or

to observe others using the equestrian arena. Dixie argues that "[i]ndividuals with a private right to use a road, such as adjoining property owners who 'may have documentary or prescriptive rights to use the road,' are not members of the public." *Utah County v. Butler*, 2008 UT 12, ¶ 19, 179 P.3d 775.

¶ 14 We determine that the court did not err in finding that no disputed issues of material fact exist regarding the public use of the Road such as to prevent summary judgment. The summary judgment documents and supporting affidavits, in fact, provide an adequate basis to support the district court's public use of the Road finding.

¶ 15 The collective substance of Plaintiffs' unrebutted affidavits is that the *general public* drove on the Road continuously—from about 1972 until 2002—to get from one end of the neighborhood to the next, traveled the Road on horses to get from one part of the neighborhood to the other, drove on the Road to watch friends practice for rodeo events, and drove on it to take horses to be bred or stabled and to buy and sell horses.[2] In addition to the above-referenced evidence, there are other direct statements relating to the public use of the Road. Mansfield Jennings, previous owner of adjacent property, stated in his affidavit that "[t]he subject road did not dead end in any fashion and was continually used by the general public to ride their horses as described above from about 1972 until 2002." Gilbert Jennings, another prior owner of adjacent property, stated in his affidavit that "people frequently practiced rodeo events at the arena or simply in general practiced to improve their roping, barrel racing, etc., and these practices were not public events. Notwithstanding, often times the general public came to watch these practices."

¶ 16 Moreover, Dixie failed to rebut the affidavit evidence demonstrating public use of the Road. Dixie submitted two affidavits from Charles Welch, neither of which includes evidence sufficient to raise a material issue of fact regarding public use of the

2. Evidence of the use of the Road in this manner was articulated in the affidavits of H. Val Hafen, Gilbert Jennings, Mansfield Jennings, Lewis J. Bowler, and Conrad Bowler. At the time the affidavits were written, only H. Val Hafen and Lewis J. Bowler owned property abutting the Road.

Road. Dixie asserts that "[t]here were and are disputes of the material facts as to whether the claimed use of the [Road] was by the general public." We do not agree. Welch's first affidavit, at most, attempts to raise a permissive use argument wherein he states that Dixie has "never allowed the general public to use the property as a thoroughfare, a roadway, a right-of way, or any other permissive use save and except if by implied or express permission." This assertion does not refute Plaintiffs' evidence that the general public actually used the Road for the non-public activities Plaintiffs assert occurred. Instead, it provides evidence only as to the issue of permissive use of the Road, which we discuss in the next section of this opinion. Welch's second affidavit also fails to rebut Plaintiffs' public use evidence and instead merely clarifies that each of Plaintiffs' affiants presently or previously owned property adjacent to the Road.

 ¶ 17 In a related argument, Dixie asserts that Plaintiffs' affidavit evidence does not establish public use because it is undisputed that all of Plaintiffs' affiants were direct or indirect current or former owners of property abutting the Road. It is true that all public use evidence was presented by current or former owners of adjacent property. However, previous ownership of neighboring parcels does not automatically disqualify affiants from qualifying as members of the public. Welch does not assert that the affiants possessed some private right of use. *See Butler*, 2008 UT 12, ¶ 19, 179 P.3d 775 ("Individuals with a private right to use a road, such as adjoining property owners who 'may have documentary or prescriptive rights to use the road,' are not members of the public....."). Nor does Dixie provide any legal support for the proposition that evidence of public use of the road provided by adjacent owners cannot establish public use under the Dedication Statute. *Cf. Bonner v. Sudbury*, 18 Utah 2d 140, 417 P.2d 646, 648 (1966) (considering evidence of public use from witnesses who lived near the subject road in conjunction with other evidence).

¶ 18 Because Plaintiffs' affidavits provided evidence of public use of the Road and Dixie failed to present evidence to the contrary, the district court did not err in concluding that no genuine issue of material fact existed regarding public use sufficient to prevent summary judgment.

## B. Use of the Road Without Permission

 ¶ 19 Dixie next asserts that any and all access to the Road was in fact with either its express or implied permission. Under Utah law, permissive use cannot give rise to a public thoroughfare. The district court found that there was no material issue pertaining to permissive use, regardless of Charles Welch's affidavit, since "[Dixie] concede[s] that members of the public have been invited to attend different rodeo type [e]vents, such as calf roping, etc., *to which their permission ceased after the event was concluded.*"

¶ 20 Dixie further concedes that "[t]he public rodeo events to which the general public was invited occurred approximately between four to six times a year." When combined with Dixie's failure to dispute the almost daily use of the Road by members of the public, there exists adequate support for the district court's conclusion that there was no material dispute that the general public used the Road without Dixie's permission.

## II. Compliance with Rule 7 of the Utah Rules of Civil Procedure

 ¶ 21 Dixie raises another argument challenging the evidence Plaintiffs submitted to prove that the Road was dedicated and abandoned to public use. Specifically, Dixie asserts that the district court erred in accepting, for purposes of summary judgment, the facts as set forth by Plaintiffs. The district court relied upon Dixie's failure to abide by the directive in rule 7(c)(3)(B) of the Utah Rules of Civil Procedure that opposition to a motion for summary judgment must include a verbatim restatement of each of the moving party's facts that is controverted with an explanation of the grounds for any dispute, supported by citation to relevant materials, *see* Utah R. Civ. P. 7(c)(3)(B).

¶ 22 Dixie's opposing memorandum did not contain such a verbatim restatement for each of Plaintiffs' facts that it sought to contest.

In its summary judgment ruling, the district court concluded that Dixie had failed to properly controvert the facts asserted in Plaintiffs' cross-motion for summary judgment because of Dixie's violation of rule 7(c)(3)(B)'s directive. As a result of the violation, the district court accepted the Plaintiffs' facts as uncontroverted.

¶ 23 Dixie asserts that it substantially complied with rule 7(c)(3)(B) because the portions of Plaintiffs' statement of facts that were in dispute were set forth in, and specifically controverted by, the Charles Welch affidavit that Dixie attached to and referenced in its own memorandum in support of partial summary judgment. Dixie does not, however, contest that its opposing memorandum did not contain a verbatim restatement of each of Plaintiffs' facts that Dixie sought to contest. Thus, we must determine whether the district court abused its discretion in deeming admitted those facts Plaintiffs submitted in support of its motion for summary judgment that Dixie did not include in its own memorandum in accordance with rule 7(c)(3)(B). Rule 7(c)(3)(B) states:

> A memorandum opposing a motion for summary judgment shall contain a verbatim restatement of each of the moving party's facts that is controverted, and may contain a separate statement of additional facts in dispute. For each of the moving party's facts that is controverted, the opposing party shall provide an explanation of the grounds for any dispute, supported by citation to relevant materials, such as affidavits or discovery materials. For any additional facts set forth in the opposing memorandum, each fact shall be separately stated and numbered and supported by citation to supporting materials, such as affidavits or discovery materials.

*Id.*

¶ 24 "[T]he trial court has discretion in requiring compliance with [rule 7 of the Utah Rules of Civil Procedure]." *Bluffdale City v. Smith*, 2007 UT App 25, ¶ 5, 156 P.3d 175 (second alteration in original) (internal quotation marks omitted). "The district court's discretion in enforcing compliance with rule 7(c)(3)(B) has been addressed in several cases decided under the former but compara-

ble rule 4–501(2)(B) of the Utah Rules of Judicial Administration." *Id.* ¶ 8. These cases acknowledge that the court has discretion either to grant summary judgment for noncompliance with rule 7(c)(3)(B) or to regard the failure to comply with the rule as a mere technical violation and consider the motion on its merits. *See id.* ¶¶ 9–11.

¶ 25 Dixie argues that the district court abused its discretion in declaring Plaintiffs' claimed facts admitted based on Dixie's technical violation of rule 7(c)(3)(B). Dixie asserts that despite any technical violation of rule 7(c)(3)(B), Dixie clearly stated facts in the Welch affidavits sufficient to controvert the factual allegations set forth in Plaintiffs' cross-motion for summary judgment. A careful review of Dixie's opposition memorandum and the attached Welch affidavits, however, reveal no basis for any dispute of facts.

¶ 26 A district court is not obliged to comb the record to determine whether a genuine issue as to any material fact exists to prevent summary judgment. Rather, it is the nonmoving party's burden to demonstrate that such a conflict exists. *See Orvis v. Johnson*, 2008 UT 2, ¶ 10, 177 P.3d 600 ("The burden on summary judgment then shifts to the nonmoving party to identify contested material facts, or legal flaws in the application of judicial estoppel."); *Stevens v. LaVerkin City*, 2008 UT App 129, ¶ 18, 183 P.3d 1059 ("Once the movant has [met its burden,] the burden then shifts to the *nonmoving* party, who may not rest upon the mere allegations or denials of the pleadings, but *must set forth specific facts* showing that there is a genuine issue for trial. Failure to produce acceptable evidence demonstrating a genuine issue of material fact will result in a grant of summary judgment."). In its opposing memorandum, Dixie discussed and made reference to the following sworn statement in the Welch affidavit: "I know that each one of [Plaintiffs] has been, or in fact, is presently an adjacent property owner and therefore, would qualify as an 'interested person' within the language of the statutory authority, and

the case law as I understand it."[3] This statement does nothing to dispute Plaintiffs' claimed facts. In fact, Plaintiffs' motion itself included numerous references to Welch's affidavit. And, Plaintiffs' fact number eleven states:

> The general public drove [on the Road] to get from one end of the neighborhood to the next, rode horses on it to get from one part of the neighborhood to the other, drove on it to watch friends practice rodeo events, drove on it to take horses to be bred or stabled, drove on it to buy horses and sell horses, and drove on it to buy or fix saddles and tack. This occurred continuously and almost on a daily basis from about 1972 until approximately two years ago when [Dixie] put up gates across the subject road.

¶ 27 Dixie made two references to the Welch affidavit in its own motion for partial summary judgment. Neither, however, disputes Plaintiffs' facts. In fact, the statements Dixie referenced in its motion for summary judgment were also cited by Plaintiffs in support of Plaintiffs' own claimed facts.[4] The district court considered Welch's affidavits and cited factual allegations contained in paragraphs 8 through 11 of the first Welch affidavit in its Findings of Fact and Conclusions of Law.

¶ 28 Notwithstanding Dixie's argument, the cited references to the Welch affidavit did not provide a basis for a material dispute of fact. Thus, we are unpersuaded that Dixie adequately challenged the summary judgment motion in compliance with rule 7. We therefore conclude that the district court did not abuse its discretion when it determined that Dixie did not properly contest Plaintiffs' alleged facts.

3. This statement was articulated in Welch's second affidavit.

4. The referenced statements were taken from Welch's first affidavit and are as follows:
 6. I can state of my own personal knowledge, that many years ago, certainly more than 10, and perhaps more than 20, there were discussions with the City of St. George, contemplating making the subject property a dedicated road.

¶ 29 We recognize that Dixie's failure to satisfy the requirements of the summary judgment rule does not alone justify the grant of a cross-motion for summary judgment. See A.C. Fin., Inc. v. Salt Lake County, 948 P.2d 771, 784 (Utah 1997) ("The mere failure of one party to satisfy the requirement of summary judgment does not justify the grant of a cross-motion for summary judgment."). However, a review of the district court's Findings of Fact and Conclusions of Law, as discussed in the previous section, reveals that the district court carefully considered whether the facts deemed admitted were sufficient to meet Plaintiffs' burden of proving with clear and convincing evidence the statutory requirements for dedication. Because Dixie failed to substantially comply with rule 7 and the district court properly considered whether the facts deemed admitted met Plaintiffs' burden of proof, we conclude that the court did not err in granting Plaintiffs' cross-motion for summary judgment.

### III. Improper Weighing of Disputed Evidence

¶ 30 Dixie next claims that it is apparent from the district court's ruling that the court improperly weighed the disputed and contradictory facts and evidence regarding use of the Road as a public thoroughfare in its summary judgment ruling. "On a motion for summary judgment, a trial court should not weigh disputed evidence, and its sole inquiry should be whether material issues of fact exist." Bear River Mut. Ins. Co. v. Williams, 2006 UT App 500, ¶ 15, 153 P.3d 798 (internal quotation marks omitted). Here, the district court specifically found that no material issues of disputed facts existed pursuant to rule 7 of the Utah Rules of Civil Procedure.

. . . .

8. I can state that with my personal knowledge from time to time over the course of many years, the Dixie Riding Club has scheduled events, such as calf roping, rodeos for the high school, 4-H clubs, and other groups that were interested in livestock events, to come to the arenas that are present upon the grounds, and to then and there participate in scheduled events.

¶ 31 Dixie argues that the district court "acknowledged [that it weighed the disputed and contradictory facts and evidence] in its ruling, [when it drew] a contrast between the parties' respective materials and not[ed] that Plaintiffs' materials struck the court as 'clearly more detailed and analytical.' " The district court actually made no such acknowledgment. The statement Dixie refers to was one of several the district court made in its summary judgment ruling to explain the brevity of its ruling.

> The brevity of this Ruling is not indicative of the time I have spent in the review of these Motions. It has been my experience and that of other judges of the trial bench, however, that the parties are primarily interested in the outcome and that the appellate courts seldom acknowledge the opinions and reasoning of the trial courts.... Finally, Plaintiffs' memoranda and materials are clearly more detailed and analytical than [Dixie's] memoranda and materials so that few serious issues are adequately framed for discussion.

This statement does not, as Dixie asserts, demonstrate an improper weighing of the evidence, and we find no merit to this argument.

## IV. Road Width

¶ 32 Dixie maintains that the district court committed plain error by declaring the width of the Road to be fifty feet without conducting an assessment and determination as to the reasonable and necessary width of the Road. The plain error test requires "the demonstration of error; a qualitative showing that the error was plain, manifest, or obvious to the trial court; and evidence that the error affected the substantial rights of a party." *IHC Health Servs., Inc. v. D & K Mgmt., Inc.*, 2008 UT 73, ¶ 36, 196 P.3d 588 (internal quotation marks omitted).

¶ 33 Dixie argues that the district court had a duty, pursuant to Utah Code section 72–5–104(3), to analyze the reasonable and necessary width of the Road, which it failed to do when it established the width of the Road absent any analysis. Dixie further claims that the width should be what was reasonable and necessary to permit safe travel as established by the historical use of the road, which may be narrower than fifty feet. *See generally* Utah Code Ann. § 72–5–104(3) (2001) ("The scope of the right-of-way is that which is reasonable and necessary to ensure safe travel according to the facts and circumstances."); *Memmott v. Anderson*, 642 P.2d 750, 754 (Utah 1982) ("Generally, the width of a public road is determined according to what is reasonable and necessary under all the facts and circumstances.").

¶ 34 In this case, the district court's Decree of Dedication declared the Road to be fifty feet wide. Plaintiffs had, indeed, submitted some evidence of the width of the road.[5] However, Plaintiffs have pointed to no evidence concerning the reasonable and necessary width of the Road. The district court's Findings of Fact and Conclusions of Law are devoid of any factual determination of the necessary and reasonable width of the Road. Evidence of the width of the Road does not address the reasonable and necessary requirement for determining width of the Road. *See Schaer v. State*, 657 P.2d 1337, 1342 (Utah 1983) (finding that the court erred in relying on evidence of a city ordinance which set the requirements regarding the widths of streets in a proposed subdivision plan but did "not address the reasonable and necessary width of a highway dedicated to the public"). Consequently, we are unable to review the district court's method of determining the necessary and reasonable road width. We therefore reverse the district court's order as it pertains to the width of the Road and remand this matter to determine the reasonable and necessary width of the Road. *See id.* (reversing summary judgment on road width issue).

## V. Necessary and Indispensable Party

¶ 35 Finally, we address Dixie's argument, raised for the first time on appeal, that the City of St. George is a necessary and indispensable party to this action. "Generally we

---

5. Plaintiffs assert that they submitted a dedication plat, a legal document of conveyance including an easement to the City of St. George, and various affidavits that identify the Road as having a width of fifty feet.

will not consider issues not preserved in the district court absent plain error or exceptional circumstances." *Cassidy v. Salt Lake County Fire Civil Serv. Council,* 1999 UT App 65, ¶ 9, 976 P.2d 607. "Nevertheless, a party may raise the issue of failure to join an indispensable party at any time in the proceedings, including for the first time on appeal." *Id.*

¶ 36 Under rule 19 of the Utah Rules of Civil Procedure, a party must be joined if that party is necessary and it is feasible to join that party. *See* Utah R. Civ. P. 19(a). A party is necessary if:

> (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest.

*Id.*

¶ 37 Dixie argues that the City of St. George is a necessary and indispensable party to this case because St. George either owned or had an easement to a portion of the Road. Other than asserting that the City of St. George has had an easement since at least 1974, Dixie fails to discuss specific facts demonstrating that the City of St. George, "based on the criteria set forth in rule 19(a), [is a] necessary part[y] to this action." *Smith v. D.A. Osguthorpe,* 2002 UT App 361, ¶ 50, 58 P.3d 854 (internal quotation marks omitted). The substance of Dixie's necessary party argument is as follows:

> Plaintiffs' own evidence shows that the [C]ity of St. George is a "necessary" party. To begin with, it is undisputed that the [Road] is located within the city limits of the City of St. George. Plaintiffs then presented evidence through the affidavit of title searcher David Elwess that the City has had an easement to a 46–foot wide portion of the [Road] since at least 1974, and that Dixie had granted an additional four-foot easement to the City which was

added to that allegedly pre-existing 46–foot wide strip. Plaintiffs also presented evidence through the Elwess affidavit to the effect that the [Road] property was not on the tax rolls of Washington County, presumably to show the [Road] was already owned by the City as a public road. If any of that evidence is correct (which Dixie does not admit), then the City's interest in the property that is the subject of this case makes the City a necessary party to this case, because the resolution of this litigation in favor of either Plaintiffs or in favor of Dixie is likely to impair or impede the City's ability to protect its alleged interests. That also could leave Plaintiffs and Dixie subject to a risk of incurring inconsistent obligations by reason of the City's claimed interests.

(Footnote omitted.)

¶ 38 The burden of presenting specific facts and reasoning that lead to the conclusion that a party is a necessary or indispensable party is on the party attempting to persuade the court that parties are necessary. *See Grand County v. Rogers,* 2002 UT 25, ¶ 29, 44 P.3d 734. We conclude that Dixie did not present specific facts or reasoning why the City of St. George is a necessary party and therefore determine that the City is not a necessary party under rule 19. *Cf. id.* ¶ 30.

## CONCLUSION

¶ 39 Because Dixie did not provide evidence to controvert Plaintiffs' affidavit evidence that the Road was used as a public thoroughfare without Dixie's permission, the district court did not err in concluding that no genuine issue of material fact existed to prevent summary judgment. Furthermore, Dixie points to nothing in the district court's Findings of Fact and Conclusions of Law that demonstrates an improper weighing of the evidence, nor does Dixie demonstrate that the City of St. George is a necessary party to this action. Accordingly, we affirm the district court's summary judgment ruling whereby the court denied Dixie's motion for partial summary judgment and granted Plaintiffs' summary judgment motion.

¶ 40 However, the district court's Findings of Fact and Conclusions of Law is without a determination of the necessary and reasonable width of the Road. Therefore, we reverse the district court's order as it pertains to the width of the Road and remand this matter for a determination of the reasonable and necessary width of the Road.

¶ 41 WE CONCUR: PAMELA T. GREENWOOD, Presiding Judge, and RUSSELL W. BENCH, Judge.