2005 UT App 240

Lloyd McEWAN and Joann McEwan,
Plaintiffs and Appellants,

v.

MOUNTAIN LAND SUPPORT CORP.;
and WCI Waste Container, Inc.,
Defendants and Appellees.

No. 20030898–CA.

Court of Appeals of Utah.

May 26, 2005.

Terry M. Plant, Plant Christensen & Kanell, Salt Lake City, for Appellants.

Michael W. Homer and Jesse C. Trentadue, Suitter Axland, Salt Lake City, for Appellees.

Before Judges BENCH, GREENWOOD, and THORNE.

## OPINION

GREENWOOD, Judge:

¶ 1 Plaintiffs Lloyd and Joann McEwan, as landlords, appeal the trial court's grant of summary judgment in favor of their tenants, Mountain Land Support Corp. (Mountain) and WCI Waste Container, Inc. (WCI), in a subrogation action to recover damages resulting from a fire that destroyed the leased premises.[1] We affirm.

## BACKGROUND

¶ 2 Plaintiffs own an industrial building complex known as "Lloyd's of Lindon" (the Complex), located in Lindon, Utah. On January 2, 1999, Defendants leased space (the Premises) in the Complex, which they used to construct and paint large commercial waste containers and trailers.

¶ 3 Plaintiff Joann McEwan drafted the lease agreement (the Lease) between Plaintiffs and Defendants. She prepared the Lease by essentially cutting and pasting the provisions from a form lease on her computer. Among other clauses, the Lease contained two provisions requiring Defendants

---

1. This action was originally commenced by GER A. Partnership, the name under which Plaintiffs conduct business. Plaintiffs were substituted for GER A. Partnership on February 3, 2003. Mountain is a Utah corporation doing business as WCI.

to obtain casualty and liability insurance for the Premises in the amount of $500,000. Defendants obtained a casualty/liability insurance policy, but did not name Plaintiffs as additional insureds to this policy, as required by the Lease.

¶4 On July 17, 1999, a fire ravaged the Complex, causing extensive property damage. The source and cause of the fire is disputed.

¶5 Plaintiffs insured the Complex through Travelers Indemnity Company of America (Travelers). Travelers compensated Plaintiffs for the damage to the Complex pursuant to the insurance policy and then filed this subrogation action in Plaintiffs' names. Plaintiffs' complaint consisted of three counts: (1) negligence, (2) res ipsa loquiter, and (3) breach of contract.

¶6 Defendants filed two separate motions for partial summary judgment. In their first motion, Defendants claimed that they were entitled to summary judgment on Plaintiffs' negligence and res ipsa loquiter claims because Plaintiffs had no proof that Defendants were negligent or were the proximate cause of the fire, and that Plaintiffs had not met the necessary elements to trigger the doctrine of res ipsa loquiter.

¶7 Defendants' second motion for summary judgment challenged Plaintiffs' breach of contract claim. Defendants argued, in relevant part, that: (1) there was no breach of contract because the Lease only required them to maintain liability insurance and casualty insurance for the Premises, not fire/property insurance; and (2) because Plaintiffs maintained fire/property insurance with Travelers, absent an express agreement to the contrary, Defendants were presumed to be coinsureds of Plaintiffs, and thus, Travelers could not recover against them on the subrogation claim.

¶8 The trial court granted Defendants' second motion for summary judgment[2] on the grounds that the Lease

> did not require Defendants to maintain property or fire insurance on the premises

and that the Lease is not ambiguous with respect to the issue of property or fire insurance. Based upon these findings, the Court further finds that Defendants were co[ ]insureds of the McEwans and that based upon their status as ... co[ ]insureds[,] *GNS Partnership v. Fullmer*, 873 P.2d 1157 (Utah Ct.App.1994)[,] bars any subrogation claim by Travelers.

## ISSUE AND STANDARD OF REVIEW

¶9 On appeal, Plaintiffs contend that the trial court erred in granting summary judgment for Defendants and dismissing their subrogation claim. Plaintiffs argue that Defendants were not implied coinsureds of Plaintiffs because the Lease required Defendants to maintain property insurance on the leased premises or was at least ambiguous as to the issue of property insurance.

¶10 "On review of a grant of summary judgment, we view the facts, and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party." *GNS P'ship v. Fullmer*, 873 P.2d 1157, 1159 (Utah Ct.App.1994) (quotations and citations omitted). "Because summary judgment is granted as a matter of law, we review the trial court's legal conclusions for correctness, according them no deference." *Id.* at 1160. Additionally, "[w]e accord [a trial court's] interpretation of [a] contract no deference and review it for correctness." *WebBank v. American Gen. Annuity Serv. Corp.*, 2002 UT 88, ¶15, 54 P.3d 1139 (first alteration in original) (quotations and citations omitted).

## ANALYSIS

■■■ ¶11 "The doctrine of subrogation allows an insurer, 'having paid a loss resulting from a peril insured against, to step into the shoes of its insured and recoup its losses from a tort-feasor whose negligence caused the loss.'" *GNS P'ship v. Fullmer*, 873 P.2d 1157, 1160 (Utah Ct.App.1994) (quoting *Board of Educ. v. Hales*, 566 P.2d 1246, 1247 (Utah 1977)). "Subrogation is an equitable doctrine, hence, equitable principles apply in

---

**2.** The trial court did not rule on Defendants' first motion for summary judgment, presumably because it was then unnecessary.

determining its availability." *Id.* (citation omitted). "[I]t is well established that 'an insurer may not recover against its own insured, or a coinsured under the policy.'" *Id.* (quoting *Hales,* 566 P.2d at 1247).

¶ 12 The fate of Plaintiffs' subrogation claim is controlled by our decision in *GNS Partnership.* Therefore, we begin our analysis with a review of *GNS Partnership* to determine whether, as the trial court concluded, it bestows upon Defendants the status of implied coinsureds, thereby barring Plaintiffs' subrogation claim.

¶ 13 In *GNS Partnership,* the tenant negligently caused a fire in the apartment building in which he lived. *See id.* at 1159. "The rental agreement between the parties [was] silent on the issues of liability for fire damage and responsibility for fire insurance, and the parties never discussed these issues." *Id.* However, the landlord insured the apartment building against fire damage. *See id.* The landlord's insurance company, after compensating the landlord, filed a subrogation action against the tenant. *See id.* The trial court granted summary judgment for the tenant on the grounds that he was a coinsured under the landlord's fire insurance policy. *See id.*

¶ 14 We affirmed on appeal, first holding that "a tenant is presumed to be a coinsured of the landlord absent an express agreement between them to the contrary." *Id.* at 1163. In adopting this presumption, which is consistent with the majority position, we emphasized several persuasive policy reasons gleaned from treatises and cases of our sister jurisdictions. *See id.* at 1161–64. First, we noted that "the landlord is the party in the best position to assume the responsibility to insure." *Id.* at 1164 (citing *United Fire & Cas. Co. v. Bruggeman,* 505 N.W.2d 87, 89 (Minn.Ct.App.1993)). After all, "[t]o escape the presumption, the landlord may simply by contract require the tenant to provide insurance." *Id.* A contrary rule, we observed, would defeat the parties' reasonable expectations because

> "[p]rospective tenants ordinarily rely upon the owner of the dwelling to provide fire protection for the realty ... absent an express agreement otherwise. Certainly it

would not likely occur to a reasonably prudent tenant that the premises were without fire insurance protection or if there was such protection it did not inure to his benefit and that he would need to take out another fire policy to protect himself from a loss during his occupancy."

*Id.* at 1161–62 (emphasis omitted) (quoting *Sutton v. Jondahl,* 532 P.2d 478, 482 (Okla. Ct.App.1975) (citations omitted)). In addition, "[t]his presumption is the most efficient way to allocate insurance costs." *Id.* at 1164 (citing *Bruggeman,* 505 N.W.2d at 89). It would be impractical for apartment dwellers to insure the entire building, yet "redundant for both the landlord and the tenant to insure the same building, especially since the landlord possesses a greater property interest." *Id.* (citing *Aetna Ins. Co. v. Craftwall,* 757 F.2d 1030, 1034 (9th Cir.1985)). "Moreover, fire insurers expect to pay fire losses from negligence and calculate their rates upon that basis." *Id.* (citing *Rock Springs Realty, Inc. v. Waid,* 392 S.W.2d 270, 278 (Mo.1965)). Based upon this rationale, we followed our newly adopted presumption to hold that, because the lease was silent regarding responsibility to obtain fire insurance, the tenant was "a coinsured under [the landlord's] fire insurance policy for the limited purpose of defeating subrogation." *Id.*

¶ 15 Turning to the present case, Plaintiffs assert that the trial court erred in relying on *GNS Partnership* to grant summary judgment because the Lease was not silent regarding responsibility to obtain insurance, rather, the Lease expressly required Defendants to obtain the relevant insurance on the property or was at least ambiguous regarding insurance requirements. We disagree.

¶ 16 Because the Lease is a contract, we analyze it under well-settled rules of contract interpretation. *See Fashion Place Inv., Ltd. v. Salt Lake County,* 776 P.2d 941, 943–44 (Utah Ct.App.1989) (analyzing a lease as a contract). "The underlying purpose in construing or interpreting a contract is to ascertain the intentions of the parties to the contract." *WebBank v. American Gen. Annuity Serv. Corp.,* 2002 UT 88,

¶ 17, 54 P.3d 1139. "In interpreting a contract, [w]e look to the writing itself to ascertain the parties' intentions, and we consider each contract provision ... in relation to all of the others, with a view toward giving effect to all and ignoring none." *Id.* at ¶ 18 (alterations in original) (quotations and citations omitted). " 'If language within the four corners of the contract is unambiguous, the parties' intentions are determined from the plain meaning of the contractual language, and the contract may be interpreted as a matter of law.' " *Id.* at ¶ 19 (quoting *Central Fla. Invs., Inc. v. Parkwest Assocs.*, 2002 UT 3, ¶ 12, 40 P.3d 599).

¶ 17 The insurance provisions at issue in the Lease provide:

PROPERTY INSURANCE. Tenant shall maintain casualty insurance on the Premises in an amount equal to $500,000. Landlord shall be named as an insured in such policies. Tenant shall deliver appropriate evidence to Landlord as proof that adequate insurance is in force. Landlord shall have the right to require that Landlord receive notice of any termination of such insurance policies. Tenant shall also maintain any other insurance which Landlord may reasonably require for the protection of Landlord's interest in the Premises.

LIABILITY INSURANCE. Tenant shall maintain liability insurance in a total aggregate sum of at least $500,000. Tenant shall deliver appropriate evidence to Landlord as proof that adequate insurance is in force. Landlord shall have the right to require that Landlord receive notice of any termination of such insurance policies.

■ ¶ 18 Plaintiffs claim that the trial court erred in concluding that Defendants were not required to obtain property insurance. Specifically, Plaintiffs argue that the first insurance provision, which is under a heading entitled "Property Insurance," required Defendants to obtain "property insurance," even though the substantive language of this section obligates Defendants to obtain "casualty insurance" rather than property insurance.[3]

¶ 19 Plaintiffs cite no authority to support this proposition, although, in Plaintiffs' defense, there appears to be a dearth of authority regarding the exact weight contract headings should be given or whether they should be considered as an operative part of the contract. However, Arthur L. Corbin addressed "the effectiveness of terms not contained in the central portions of the writings that form a contract but which are preprinted on letterheads, billheads or elsewhere than in the oral or written core of the agreement." 1 Arthur Corbin, *Corbin on Contracts* § 2.12 (rev. ed.1993). He noted that "[p]rinted notices and provisions are not part of the contract and do not affect its formation if ... the specially written part of the document expressly excludes the printed provision or contains a term in conflict with it." *Id.* This persuasive authority, which has particular relevance to this case because Plaintiff Joann McEwan drafted the Lease by cutting and pasting from a form lease on her computer, suggests that the "Property Insurance" heading, which essentially contradicts the casualty insurance obligation it heads, is ineffective.

■ ¶ 20 Moreover, Plaintiffs' argument, in effect, asks us to infer that Defendants' obligation to obtain casualty insurance is really an obligation to obtain property insurance. But, such a reading contradicts the plain language of the Lease, which requires Defendants only to "maintain casualty insurance on the Premises," and "liability insurance" in the amount of $500,000. "Courts

**3.** The Lease does not define "property insurance," "liability insurance," or "casualty insurance." Under Utah law, " '[p]roperty insurance' means insurance against loss or damage to real or personal property of every kind and any interest in that property, from all hazards and causes." Utah Code Ann. § 31A–1–301(128) (2003). " 'Liability insurance' means insurance against liability ... for death, injury, or disability of any human being, or for damage to property ... [or] for other loss or damage properly the subject of insurance not within any other kind or kinds of insurance as defined in this chapter...." *Id.* § 31A–1–301(90)(a)(i), (v). And, " '[c]asualty insurance' means liability insurance." *Id.* § 31A–1–301(20). "Fire insurance" is not defined. However, because all parties to this action assume that "property insurance" covers the damage to the Complex, but liability/casualty insurance does not, and because there is no authority to the contrary, we too proceed under this assumption.

will not infer duties different from or contradictory to express rights of a contract." *Olympus Hills Shopping Ctr., Ltd. v. Smith's Food & Drug Ctrs., Inc.*, 889 P.2d 445, 456 (Utah Ct.App.1994).[4]

¶ 21 Therefore, the trial court did not err by concluding that the Lease did not obligate Defendants to obtain property insurance on the Premises. As such, the Lease was silent regarding responsibility to obtain property insurance, and, under *GNS Partnership v. Fullmer*, Defendants are presumed "coinsured[s] under [Plaintiffs'] fire insurance policy for the limited purpose of defeating subrogation." 873 P.2d 1157, 1164 (Utah Ct. App.1994).

¶ 22 Alternatively, Plaintiffs argue that summary judgment was inappropriate because the insurance provisions are at least ambiguous. "The threshold question of whether or not a lease is ambiguous is itself a question of law." *Fashion Place Inv., Ltd. v. Salt Lake County*, 776 P.2d 941, 943 (Utah Ct.App.1989). If an ambiguity exists, "extrinsic evidence must be looked to in order to determine the intentions of the parties." *Central Fla. Inv., Inc. v. Parkwest Assocs.*, 2002 UT 3, ¶ 12, 40 P.3d 599. "[A] motion for summary judgment may not be granted if a legal conclusion is reached that an ambiguity exists in the contract and there is a factual issue as to what the parties intended." *WebBank v. American Gen. Annuity Serv. Corp.*, 2002 UT 88, ¶ 22, 54 P.3d 1139 (alteration in original) (quotations and citation omitted).

¶ 23 "In evaluating whether the plain language is ambiguous, we attempt to harmonize all of the contract's provisions and all of its terms." *Central Fla. Invs.*, 2002 UT 3 at ¶ 12, 40 P.3d 599. "An ambiguity exists in a contract term or provision if it is capable of more than one reasonable inter-

pretation because of uncertain meanings of terms, missing terms, or other facial deficiencies." *WebBank*, 2002 UT 88 at ¶ 20, 54 P.3d 1139 (quotations and citations omitted).

¶ 24 In the case at hand, the trial court concluded as a matter of law that the Lease was not ambiguous and, therefore, did not consider Plaintiffs' extrinsic evidence indicating an intent to obligate Defendants to obtain property insurance.[5] Plaintiffs counter that (1) the "Property Insurance" heading; (2) the requirement under this heading for Defendants to obtain casualty insurance rather than property insurance; and (3) Defendants' seemingly redundant obligations to obtain liability insurance and casualty insurance, *see* Utah Code Ann. § 31A–1–301(20) (2003) (" 'Casualty insurance' means liability insurance . . . ."), together create ambiguity.

¶ 25 While these factors suggest that the Lease is not a model of clarity, they do not make it ambiguous. The plain language of the Lease clearly requires, in no uncertain terms, Defendants to "obtain casualty insurance on the Premises" and "liability insurance" in the amount of $500,000. No substantive provision of the Lease calls these obligations into question, and we may not empower an *otherwise innocuous contract heading* to accomplish this task. Moreover, we find the Corbin treatise applicable here as well: "[p]rinted notices and provisions are *not part of the contract* and do not affect its formation if . . . the specially written part of the document . . . contains a term in conflict with it." 1 Arthur Corbin, *Corbin on Contracts* § 2.12 (rev. ed.1993) (emphasis added). Simply put, contract headings are more appropriately regarded as organizational tools than substantive contract provisions. Therefore, while there is ostensible discord between the "Property Insurance" heading and

---

4. During oral argument, Plaintiffs claimed that, because the Lease requires Defendants to "maintain any other insurance which [Plaintiffs] may reasonably require," Defendants were somehow obligated to maintain property insurance on the premises. However, the Lease also provides "[t]his Lease Agreement contains the entire agreement of the parties and there are no other promises or conditions in any other agreement whether oral or written." It is undisputed that there are only two insurance provisions in the Lease-those cited above. Thus, although Plain-

tiffs reserved the right to require other insurance, they failed to exercise this right.

5. Specifically, Plaintiffs sought to introduce an affidavit from Plaintiff Joann McEwan in which she avows that she drafted these insurance provisions, on Travelers's advice, with the intention that Defendants would be responsible for obtaining property and liability insurance on the Premises.

the substantive obligation beneath it, because the contract heading is not actually part of the contract, there is no ambiguity.

¶ 26 We also believe that no ambiguity is created by the seemingly redundant insurance requirements. Although Defendants are separately obligated to obtain both casualty and liability insurance, because the two terms have the same meaning, *see* Utah Code Ann. § 31A–1–301(20), they are, in effect, in harmony. *See R & R Energies v. Mother Earth Indus., Inc.*, 936 P.2d 1068, 1074 (Utah 1997) ("Language in a contract is 'ambiguous' if it is reasonably capable of being understood in more than one sense." (additional quotations and citation omitted)). Additionally, if there was any uncertainty created by these redundant obligations, it is limited to whether Defendants were required to obtain separate policies for both liability and casualty insurance. However, because any failure to obtain either liability or casualty insurance is, by Plaintiffs' own admission, not at issue in this case, this uncertainty is immaterial. In no manner does this uncertainty open the door to extrinsic evidence to prove that casualty insurance actually means property insurance-a completely different and unrelated concept. *Cf. Easton v. Washington County Ins. Co.*, 391 Pa. 28, 137 A.2d 332, 337 (1957) ("Simply because the plural 'sheds' was used when only one shed existed is not a sufficient reason for permitting evidence to be introduced in order to show that a structure which is clearly not a shed is a shed within the meaning of the contract on the theory that latent ambiguity exists."). Thus, the trial court correctly concluded that the Lease was not ambiguous.

¶ 27 However, even if we were to conclude that the Lease was ambiguous, Plaintiffs' subrogation claim would still fail. Under our decision in *GNS Partnership v. Fullmer*, 873 P.2d 1157 (Utah Ct.App.1994), "a tenant is presumed to be a coinsured of the landlord absent an *express agreement between them to the contrary.*" *Id.* at 1163 (emphasis added). An ambiguous agreement is not an express agreement to the contrary. Instead, an ambiguous agreement is an uncertain one, "capable of more than one reasonable interpretation." *WebBank*, 2002 UT 88 at ¶ 20, 54 P.3d 1139 (quotations and citations omitted). Upon reading the terms which Plaintiffs assert create ambiguity, Defendants could not reasonably contemplate being held liable to Plaintiffs' insurance company for fire damage to the Premises, which is, as previously noted, what is required to overcome the presumption adopted in *GNS Partnership*. *See* 873 P.2d at 1161–64. This is not a new rule of law we announce today. Rather, we essentially reiterate our adopted presumption, which was based, in part, on the suggestion made by Robert E. Keeton in his treatise on insurance law: " '[P]erhaps [the courts] should at least adopt a rule against allowing the lessor's insurer to proceed against the lessee when lease provisions are ambiguous in this regard and the insurance policy is silent or ambiguous.' " *Id.* at 1163 (alterations in original) (quoting Robert E. Keeton, *Insurance Law* § 4.4(b), at 210 (1971) ).

¶ 28 Accordingly, we affirm the trial court's grant of summary judgment in favor of Defendants because the Lease was not ambiguous, and, even if the Lease were ambiguous, *GNS Partnership* requires an "express agreement," rather than an ambiguous one, to overcome the presumption that a tenant is a coinsured of the landlord. *See id.*[6]

## CONCLUSION

¶ 29 In sum, the trial court did not err in dismissing Plaintiffs' subrogation claim. Plaintiffs, as landlords, were presumed to carry insurance for Defendants, as tenants, absent an express agreement to the contrary.

---

**6.** Defendants also argue, in accordance with their first motion for summary judgment, which was not relied on by the trial court, that summary judgment should be affirmed because they were not negligent and Plaintiffs failed to establish the necessary elements for res ipsa loquiter. However, because we affirm summary judgment on other grounds, this issue is moot. Also, we note that the tenant's negligence is irrelevant in determining whether subrogation will be barred under *GNS Partnership v. Fullmer*, 873 P.2d 1157, 1164 (Utah Ct.App.1994) (considering the tenant's admission of negligence to have no bearing on our decision to dismiss the landlord's insurer's subrogation claim).

Plaintiffs failed to overcome this presumption because the Lease did not require Defendants to obtain property insurance. Further, the Lease was not ambiguous, but, even if it were ambiguous, Defendants were still Plaintiffs' coinsureds because an express agreement, not an ambiguous one, is required to defeat the equitable presumption. Accordingly, we affirm.

¶ 30 WE CONCUR: RUSSELL W. BENCH, Associate Presiding Judge, and WILLIAM A. THORNE JR., Judge.