2006 UT App 500

**BEAR RIVER MUTUAL INSURANCE COMPANY, Plaintiff and Appellee,**

v.

**David WILLIAMS and Deanna Williams, Defendants and Appellants.**

No. 20050618–CA.

Court of Appeals of Utah.

Dec. 14, 2006.

Shawn D. Turner, Larson Turner Fairbanks & Dalby, South Jordan, for Appellants.

Lowell V. Smith and Justin E. Scott, Smith & Glauser PC, Midvale, for Appellee.

Before Judges DAVIS, MCHUGH, and THORNE.

## OPINION

THORNE, Judge:

¶ 1 David and Deanna Williams (the Homeowners) appeal from the trial court's grant of summary judgment in favor of Bear River Mutual Insurance Company (Bear River). We reverse and remand this matter for further proceedings.

## BACKGROUND

¶ 2 The Homeowners own a rental home (the Property) located in Salt Lake City. The last tenants to occupy the Property moved out in the summer of 2002, leaving the Property in a damaged and uninhabitable condition. The Homeowners could not afford to repair the Property and had it boarded up. Over the course of the next year, there were several incidents of trespassing and vandalism on the Property. All utilities on the Property were disconnected during this period.

¶ 3 On July 3, 2003, a fire started in some debris located outside the Property's back door, causing substantial damage to the Property. Both Salt Lake County and Bear River, the Homeowners' property insurer, had fire inspectors examine the Property. Both inspectors found that there was no apparent accidental cause for the fire and concluded that the lack of an accidental cause indicated that the fire had been intentionally set. However, neither inspector found evidence of accelerant use or other conclusive proof that the fire was the result of arson.

¶ 4 The Homeowners filed a claim for fire damage with Bear River. The Homeowners' insurance policy contained an exclusion of

coverage for loss caused by "vandalism and malicious mischief ... if the dwelling has been vacant for more than 30 consecutive days immediately before the loss." Bear River determined that this policy language excluded coverage for the Homeowners' loss and filed a declaratory judgment action seeking a determination of no coverage.[1]

¶ 5 Both parties sought summary judgment based on their competing interpretations of the vandalism and malicious mischief exclusion. Bear River supported its motion with the affidavits and deposition transcripts of Rex Nelson and Jeffrey Long, the two fire inspectors, which detailed their findings and stated their opinions that the fire was intentionally set. The Homeowners argued that even if arson losses are excluded under the policy, there were disputed questions of fact regarding the actual cause of the fire. The Homeowners did not provide any affidavits contradicting the affidavits of Nelson and Long, or any other additional evidence, but did cite to portions of Nelson's and Long's deposition transcripts to support their argument.

¶ 6 The trial court granted Bear River's motion. The summary judgment order determined that there were "no genuine issues of material fact" but did not make express findings as to the cause of the fire. Nevertheless, the order stated that "[a]rson is a form of vandalism and malicious mischief, consistent with the exclusion contained in the policy." The order then concluded that there was no coverage for the Homeowners' loss. The Homeowners appeal.

## ISSUES AND STANDARDS OF REVIEW

¶ 7 The Homeowners argue that the policy exclusion for vandalism and malicious mischief should not include acts of arson. "Interpretation of an insurance contract presents a question of law." *Viking Ins. Co. of Wis. v. Coleman*, 927 P.2d 661, 663 (Utah Ct.App.1996). "This court should thus, 'accord the trial court's legal conclusions regarding the contract no deference but review them for correctness.'" *Id.* (quoting

*AOK Lands, Inc. v. Shand, Morahan & Co.*, 860 P.2d 924, 925 (Utah 1993)).

¶ 8 The Homeowners further argue that even if arson loss is excluded under the policy, the cause of the fire is a disputed fact that precludes summary judgment in favor of Bear River. "When reviewing a trial court's grant of a motion for summary judgment, this court reviews for correctness, giving no deference to the trial court's conclusions of law, and considers all evidence and reasonable inferences derived therefrom in the light most favorable to the losing party below." *Forest Meadow Ranch Prop. Owners Ass'n v. Pine Meadow Ranch Home Ass'n*, 2005 UT App 294, ¶ 16, 118 P.3d 871, *cert. granted*, 125 P.3d 102 (Utah 2005).

## ANALYSIS

### I. Vandalism and Malicious Mischief Includes Arson

¶ 9 The Homeowners first challenge the trial court's determination that arson is a form of vandalism or malicious mischief within the meaning of the policy's exclusionary language. The Homeowners argue that the policy language, read as a whole, indicates that "fire losses and vandalism and malicious mischief are separate items." We agree with the trial court that arson is a type of vandalism or malicious mischief, and that the policy unambiguously excludes coverage for arson losses when the insured premises have been vacant for the preceding thirty days.

¶ 10 The policy provides insurance against direct physical loss to the Property, but contains multiple exclusions under which coverage is not provided. The exclusion at issue in this matter states that Bear River does not insure loss to the Property caused by "vandalism and malicious mischief, theft or attempted theft if the dwelling has been vacant for more than 30 consecutive days immediately before the loss." The policy does not define vandalism or malicious mischief. Various other provisions in the policy specifically address fire, but the term arson is not used in the policy.

---

1. Bear River's complaint also alleged several other theories upon which it sought to avoid coverage. The trial court has not ruled on these theories, and we do not address them here.

¶ 11 "Insurance policies are generally interpreted according to rules of contract interpretation." *Utah Farm Bureau Ins. Co. v. Crook*, 1999 UT 47, ¶ 5, 980 P.2d 685. "Courts interpret words in insurance policies according to their usually accepted meanings and in light of the insurance policy as a whole." *Id.* "Policy terms are harmonized with the policy as a whole, and all provisions should be given effect if possible." *Id.* Additionally, "[i]nsurers 'may exclude from coverage certain losses by using language which clearly and unmistakably communicates to the insured the specific circumstances under which the expected coverage will not be provided.'" *Id.* (quoting *Alf v. State Farm Fire & Cas. Co.*, 850 P.2d 1272, 1275 (Utah 1993)).

¶ 12 Here, the Homeowners attempt to create ambiguity regarding the scope of the exclusion by arguing that arson is not mentioned in the policy; that malicious mischief and vandalism are defined in the personal property section of the policy as pilferage, theft, burglary, or larceny; and that fire loss is excluded from personal property coverage.[2] We see no tension between the various terms as used in the policy, and cannot identify the type of conflicting language that has led other courts to find coverage in this situation. *See, e.g., American States Ins. Co. v. Rancho San Marcos Props., L.L.C.*, 123 Wash.App. 205, 97 P.3d 775, 778 (2004) (examining a policy's use of the terms fire, arson, and vandalism, and concluding that "[a]ccording to this policy ... arson is different from vandalism"), *review denied*, 154 Wash.2d 1008, 114 P.3d 1198 (2005).

¶ 13 Seeing no conflict within the terms of the policy, we look to the "usually accepted meanings," *Utah Farm Bureau*, 1999 UT 47 at ¶ 5, 980 P.2d 685, of the terms vandalism and malicious mischief to determine whether arson is included therein. The New Mexico Supreme Court recently addressed this issue and concluded "that arson is a type of vandalism and malicious mis-chief." *Battishill v. Farmers Alliance Ins. Co.*, 139 N.M. 24, 127 P.3d 1111, 1115 (2006). As noted in *Battishill*,

> [t]he common and ordinary meaning of an undefined term should be based upon contemporary usage, where possible, because the issue is how a reasonable insured would understand the term at the time of purchase. We agree ... that "the ancient connotations of 'vandalism' have given way, in modern usage of the term, to a very broad meaning of the word that includes the destruction of property generally."
>
> Even if historically the term vandalism was limited to "behavior primarily directed at property having artistic, historical, architectural, literary, musical, personal or emotional significance or value" and to "damage that is not devastating," in contemporary usage, the terms vandalism and malicious mischief are not so limited.

*Id.* at 1114 (citations omitted). We agree and hold that the policy language excludes coverage of vandalism or malicious mischief losses regardless of the means used to inflict those losses, even when a loss could also be characterized by a more specific term such as arson.[3]

## II. Factual Issues Preclude Summary Judgment

¶ 14 Having determined that the policy's vandalism and malicious mischief exclusion encompasses losses due to arson, we address whether the trial court correctly treated the Homeowners' loss as an arson loss for purposes of granting Bear River's motion for summary judgment. We agree with the Homeowners that the cause of the fire remains a disputed fact and that the trial court's entry of summary judgment was erroneous.

¶ 15 Summary judgment is appropriate only "when the evidence shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson Dev.*

---

2. The Homeowners substantially misread the policy. In fact, the personal property coverage of the policy specifically excludes pilferage, theft, burglary, or larceny from the category of vandalism or malicious mischief, and specifically enumerates fire as a covered cause of loss.

3. Similarly, damage inflicted with spray paint is not excluded from the definition of vandalism merely because it can be separately categorized as graffiti.

Co. v. Tobias, 2005 UT 36, ¶ 19, 116 P.3d 323 (quotations and citations omitted); see also Utah R. Civ. P. 56(c). "On a motion for summary judgment, a trial court should not weigh disputed evidence, and its sole inquiry should be whether material issues of fact exist." Draper City v. Estate of Bernardo, 888 P.2d 1097, 1100 (Utah 1995). In reviewing the trial court's granting of a motion for summary judgment, " 'we view the facts, and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party.' " McEwan v. Mountain Land Support Corp., 2005 UT App 240, ¶ 10, 116 P.3d 955 (quoting GNS P'ship v. Fullmer, 873 P.2d 1157, 1159 (Utah Ct.App.1994)).

■ ¶ 16 The known circumstances surrounding the cause of the fire at the Property are simple and undisputed.[4] The fire started on July 3 in some debris on the exterior porch of an uninhabited building. There were no witnesses. No accelerants were found at the scene of the fire, and the debris was consistent with other debris on the Property and did not appear to have been especially placed as fuel for the fire. The door to the Property was ajar when the fire started, giving access to the interior of the Property.

¶ 17 Viewed in the light most favorable to the Homeowners, this evidence could support various theories of causation that would not necessarily rise to the level of vandalism or malicious mischief. The fire may have been the result of a carelessly dropped cigarette or match. Given the July 3 date of the fire,

there is also the possibility that the fire may have been ignited by fireworks which were then consumed in the blaze. While none of these theories may be particularly persuasive, we are not permitted to weigh the evidence in reviewing a summary judgment determination.

¶ 18 Further, there are inferences that can be drawn from the facts that tend to support the Homeowners' position. The absence of an accelerant, while hardly dispositive, is certainly consistent with an accidental fire. The fire's origin on an exposed porch also seems to support some reasonable inference against arson, as an arsonist might have taken advantage of the open door to the Property to start the fire within the shelter and concealment of the building.

¶ 19 Because the evidence, viewed in the light most favorable to the Homeowners, supports the possibility that the fire damage to the Property was accidental rather than the result of vandalism or malicious mischief, the trial court erred when it entered summary judgment in favor of Bear River on this issue.[5]

## CONCLUSION

¶ 20 The clear contractual language of the policy excludes losses to vacant structures caused by "vandalism and malicious mischief." The intentional damaging or destruction of property by fire, generally referred to as arson, is merely one form of vandalism or malicious mischief, and is thereby excluded

---

4. The Homeowners do not dispute the facts underlying Nelson's and Long's expert opinions. They merely dispute the conclusion that the experts draw from those facts, i.e., that the fire was caused by arson.

5. Bear River asserts that it is entitled to summary judgment because the Homeowners did not provide expert testimony to counter Nelson and Long's opinion testimony that the fire was an arson fire. However, the Homeowners provided citations to deposition testimony where both Nelson and Long admitted that they could not determine the intent of the person who they believed started the fire.

   Bear River argues that other portions of the experts' depositions reaffirm their ultimate opinions that the fire was arson. Even if this is the case, we are not prepared to say that the experts'

interpretation of the facts of this case is binding on the court merely because the Homeowners did not obtain their own expert to suggest a different interpretation. The facts before the trial court were not complicated or overly technical, and the Homeowners are entitled to argue their own interpretation of those facts at trial. Cf. Neely v. Bennett, 2002 UT App 189, ¶ 13, 51 P.3d 724 (rejecting, in dicta, the argument that a party's failure to rebut expert testimony of causation with opposing expert testimony "successfully establishe[s] causation as a matter of law" so as to require a directed verdict against the party); see also Dixon v. Stewart, 658 P.2d 591, 597 (Utah 1982) ("No matter how arcane the subject matter or how erudite the witness, the jury is not required to accept [an] expert's testimony as conclusive. The jurors may give such testimony any weight they choose, including no weight at all." (emphasis added)).

as a covered loss under the policy. However, in this case, whether the fire that damaged the Property was the result of vandalism or malicious mischief is a disputed factual question that precludes summary judgment in favor of either party. Accordingly, the trial court's order granting Bear River's Motion for Summary Judgment is reversed, and this matter is remanded for further proceedings consistent with this opinion.

¶ 21 I CONCUR: Carolyn B. McHugh, Judge.

DAVIS, Judge (concurring and dissenting):

¶ 22 I concur with the majority that the Homeowners' insurance policy excludes losses due to arson; but I do not believe that a genuine issue of material fact exists regarding the cause of the fire.

¶ 23 Rule 56 of the Utah Rules of Civil Procedure, which governs motions for summary judgment, states that the nonmoving party

> may not rest upon the mere allegations or denials of the pleadings, but the response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. Summary judgment, if appropriate, shall be entered against a party failing to file such a response.

Utah R. Civ. P. 56(e). In addition, "a party puts the legitimacy of a fact, supported by affidavits, depositions, or other sworn testimony, in dispute by presenting equally meaningful, sworn testimony in the form of affidavits, depositions, or interrogatories. A generic denial is inadequate." *Johnson v. Hermes Assocs.*, 2005 UT 82, ¶ 21, 128 P.3d 1151 (citation omitted). Similarly, "[t]o successfully defend against a motion for summary judgment, the nonmoving party must set forth facts 'sufficient to establish the existence of an element essential to that party's case.'" *Anderson Dev. Co. v. Tobias*, 2005 UT 36, ¶ 23, 116 P.3d 323 (quoting *Burns v. Cannondale Bicycle Co.*, 876 P.2d 415, 419 (Utah Ct.App.1994) (quotations and citation omitted)). Here, Bear River's motion was supported by the affidavits of two fire inspectors, establishing that the fire was a result of arson. The Homeowners failed to present any evidence contradicting the opinions of the fire inspectors. Therefore, the Homeowners have not "set forth specific facts showing that there is a genuine issue for trial," and summary judgment is proper. Utah R. Civ. P. 56(e). Speculation by the court of appeals about what the ultimate finder of fact may perceive from the Homeowners' lack of evidence does not satisfy this requirement. *Cf. Kent v. Pioneer Valley Hosp.*, 930 P.2d 904, 907 (Utah Ct.App.1997) (stating that "[w]hen the proximate cause of an injury is left to speculation, the claim fails as a matter of law" and summary judgment is appropriate (quotations and citation omitted)).

¶ 24 Moreover, to the extent that the majority relies on *Neely v. Bennett*, 2002 UT App 189, 51 P.3d 724, that reliance is misplaced. The majority cites dicta in *Neely* for the proposition that the Homeowners defeated Bear River's summary judgment motion simply by pointing out slight inconsistencies in the fire inspectors' depositions. I disagree. *Neely* dealt with a motion for directed verdict after the jury had heard all of the evidence. *See id.* at ¶¶ 10–15. The *Neely* court had already affirmed the trial court on the grounds that Neely "failed in her duty to marshal" when it gratuitously observed that the appellee's failure to rebut the opinions of Neely's expert witnesses did not establish causation as a matter of law. *Id.* at ¶¶ 12–13. *See, e.g., State v. Daniels*, 2002 UT 2, ¶ 35, 40 P.3d 611 (defining dicta as "not critical to the holding"). Similarly, *Dixon v. Stewart*, 658 P.2d 591 (Utah 1982), deals with the jury's ability to weigh expert testimony after all the evidence is in. *See id.* at 597. Because I do not believe *Neely* and *Dixon* are sound authority here, I would determine this case based upon rule 56(e) of the Utah Rules of Civil Procedure and its related case law. *See* Utah R. Civ. P. 56(e); *Johnson*, 2005 UT 82 at ¶ 21, 128 P.3d 1151.

¶ 25 For the foregoing reasons, I would affirm summary judgment in favor of Bear River.

2006 UT App 511

STATE of Utah, Plaintiff and Appellee,

v.

Azharn ALFATLAWI, Defendant and Appellant.

No. 20050678–CA.

Court of Appeals of Utah.

Dec. 21, 2006.

John Pace, Salt Lake City, for Appellant.

Mark L. Shurtleff, Atty. Gen., and Laura B. Dupaix, Asst. Atty. Gen., Salt Lake City, for Appellee.

Before GREENWOOD, Associate P.J., DAVIS and THORNE, JJ.

## OPINION

DAVIS, Judge:

¶ 1 Defendant Azharn Alfatlawi appeals from his first degree felony convictions and sentences for six counts of aggravated robbery; see Utah Code Ann. § 76–6–302 (2003), and one count of aggravated burglary, see id. § 76–6–203 (2003).

## BACKGROUND

¶ 2 "We relate the facts and 'all reasonable inferences that may be drawn [therefrom] in a light most favorable to the [jury] verdict.' " State v. Hamilton, 2003 UT 22, ¶ 2, 70 P.3d 111 (first alteration in original) (quoting State v. Dunn, 850 P.2d 1201, 1212 (Utah 1993)).

¶ 3 Seven days after being paroled, Defendant and two accomplices committed three robberies by driving up to their victims, pointing a gun at them, and demanding money. Two days later, Defendant and his accomplices committed additional robberies using the same technique. One of the later robberies also resulted in a burglary because Defendant and his accomplices forced their way into their victim's home and stole her money and property. Police arrested Defendant and his two accomplices and charged them with eight counts of aggravated robbery and one count of aggravated burglary. Both accomplices negotiated plea bargains and only Defendant proceeded to trial.

¶ 4 At the preliminary hearing, the court dismissed one count of aggravated robbery against Defendant. The seven remaining counts of aggravated robbery and the aggravated burglary charge were tried to a jury. For each charge, the State sought a dangerous weapon enhancement, see Utah Code Ann. § 76–3–203.8 (Supp.2006), and an "in concert," or group criminal activity enhancement, id. § 76–3–203.1 (Supp.2006).

¶ 5 During jury selection, the trial court asked the prospective jurors to state where they and their family members worked. Prospective juror number ten (Juror Ten) stated that his or her child worked for "Utah Patrols." At the request of Defendant's trial counsel, the trial court asked the jurors if any of their family members worked in law enforcement, and Juror Ten did not reply. The trial court also asked if any of the prospective jurors or their family members had been the victims of a crime. Juror Ten stated that his or her spouse had been robbed at random and hit in the head with a tire iron. For that reason, trial counsel equivocally challenged Juror Ten for cause while discussing the juror in the trial judge's chambers. Trial counsel asked the trial judge and prosecutor if Juror Ten should be specifically questioned about whether the mugging would affect his or her impartiality.

In response, the trial judge stated that Juror Ten did not need to be rehabilitated, and that he would deny a challenge for cause. The trial court rejected the challenge because Juror Ten stated that the mugging of his or her spouse would not affect his or her ability to be impartial and to follow the directions of the court. Juror Ten was empaneled.

¶ 6 The trial court also asked the potential jurors if Defendant's tattoo, which prominently stated "Iraqi Pride" across his forehead, would affect their impartiality. Prospective juror thirty-one (Juror Thirty–One) stated in open court that he or she would not be affected by the "Iraqi Pride" tattoo, but that Defendant's teardrop tattoo below his eye would affect his or her impartiality. The trial court questioned Juror Thirty–One in chambers, where he or she stated that teardrop tattoos signify the tattoo wearer's gang involvement, prior imprisonment, or commission of murder. The trial court struck Juror Thirty–One for cause, but did not ask the remaining potential jurors if anyone else had concerns about Defendant's teardrop tattoo. During the remainder of jury selection trial counsel used peremptory challenges on a former police officer, an individual whose sibling worked as a parole officer, and two burglary victims.

¶ 7 Once the jury was empaneled, a two-day trial occurred. Defendant alleged that he did not commit the crimes at issue. The State called one of Defendant's accomplices, James Butcher, to testify that Defendant committed the crimes, along with a third accomplice, James Arthur. Defendant's trial counsel attacked Butcher's credibility during cross-examination. In response, the State corroborated Butcher's testimony with physical evidence tying Defendant to three of the crimes—the burglary and two robberies—and with testimony from four of the robbery victims identifying Defendant as the gunman. When the parties and the court discussed jury instructions, trial counsel did not request, and the court did not offer, an instruction on the unreliability of accomplice testimony. See id. § 77–17–7(2) (2003). However, the jury did receive general instructions on the credibility of witnesses. Trial counsel also did not request, and the

court did not offer, a jury instruction containing a detailed definition of the "in concert" element of the group criminal activity enhancement to Defendant's crimes. Id. § 76–3–203.1(1)(b).

¶ 8 When the jury finished deliberating, the trial court ordered Defendant to be shackled prior to the return of the jury. The trial court stated that the shackling was in response to allegations that witnesses testifying against Defendant had been threatened. Trial counsel did not object to this shackling and the jury returned and rendered its verdict. Defendant remained shackled while the jury was polled, and nothing in the record suggests the jurors were aware that Defendant was shackled. The jury acquitted Defendant of one count of aggravated robbery, and convicted him of the six remaining counts of aggravated robbery and the aggravated burglary charge.

¶ 9 At the sentencing hearing, Defendant asked the trial court to order the sentences to run concurrently. The trial judge began discussing Defendant's sentence and noted that Defendant had "been involved in the criminal justice system since [he] was very young." The judge also stated that during trial he learned of "the trauma that the victims went through." Later in the hearing, Defendant interrupted the trial judge and, consistent with his defense at trial, stated that he did not commit the crimes at issue. After the trial judge told him to be quiet, Defendant responded by swearing at the judge and making abusive threats to the judge and his family. As a result of this outburst, the trial judge ordered Defendant removed from the courtroom. The judge then proceeded with sentencing, stating:

> If that's the kind of people we got over in Iraq, maybe we ought to get out. I suspect that's not the case. I suspect there are good people, just like everywhere else in the world. Mr. Alfatlawi is not one of them. He is a criminal of the worst kind. He preys on people that are minding their own business. He robbed a store where a lady was trying to make a new store work, in the middle of the night. They took advantage of a widow in the Cove area, who went out ... to try and

give assistance, and they terrorized her. A man coming home, unloading his baggage in his home, they robbed. A young woman walking down the street, who was out of gas, in the night, coming home from work, they attempted to rob her. She didn't have anything, so they couldn't take it. Random acts of violence, for example, on [one of the victims]. This is just outside the pizza store on 13th there. They pull up and point a gun at him and demand money. He only has five dollars, but he gives it to them. And on and on and on.

This is the kind of guy that ought to be off the street for a long period of time, as long as I can make it. Considering his attitude, if the Board of Pardons let's [sic] him out in other than a box, they are nuts, because he will do this again. It is too bad we can't deport him back to Iraq. If I had any say-so about it, that's exactly where he would go, and he can deal with the situation over there. He would last about 20 minutes, with his attitude.

But, in any event, Mr. Alfatlawi has earned and he gets from me a consecutive sentence on each one of these. They all run consecutively. By my count it is 70 years to life.... This guy deserves to be in prison for a long, long time. Commitment forthwith. You can give him the good news, Mr. Simms.

. . . .

.... Tell Mr. Alfatlawi to have a nice life.

Thus, the trial court ordered Defendant to serve his seven sentences consecutively. *See id.* § 76–3–401 (2003).

¶ 10 Appellate counsel moved for a remand to determine whether trial counsel performed ineffectively, *see* Utah R.App. P. 23B, which motion was denied. Defendant now appeals his convictions and sentences.

## ISSUES AND STANDARDS OF REVIEW

■ ¶ 11 Defendant raises eight issues on appeal. Six of Defendant's claims involve allegations of ineffective assistance of counsel in violation of his rights under both the United States and Utah Constitutions. *See* U.S. Const. amend. VI; Utah Const. art. I, § 12.

"When an ineffective assistance of counsel claim 'is raised for the first time on appeal without a prior evidentiary hearing, it presents a question of law.'" *State v. Holbert,* 2002 UT App 426, ¶ 26, 61 P.3d 291 (quoting *State v. Bryant,* 965 P.2d 539, 542 (Utah Ct.App.1998)).

■ ¶ 12 Five of Defendant's arguments include allegations of plain error. To establish plain error and to obtain appellate relief from an alleged error that was not properly objected to, Defendant must show that "(i) [a]n error exists; (ii) the error should have been obvious to the trial court; and (iii) the error is harmful, i.e., absent the error, there is a reasonable likelihood of a more favorable outcome for [Defendant]." *State v. Cruz,* 2005 UT 45, ¶ 16, 122 P.3d 543 (quotations and citation omitted); *see also State v. Powell,* 872 P.2d 1027, 1031 (Utah 1994).

■ ¶ 13 Next, Defendant challenges the constitutionality of the dangerous weapon enhancement statute, *see* Utah Code Ann. § 76–3–203.8, arguing that it violates his right against double jeopardy. Defendant claims that we may review this issue under the exceptional circumstances doctrine. We apply exceptional circumstances when "our failure to consider an issue that was not properly preserved for appeal would ... result[ ] in manifest injustice." *State v. Nelson–Waggoner,* 2004 UT 29, ¶ 23, 94 P.3d 186.

■ ¶ 14 Defendant also challenges the trial court's determination that his sentences should run consecutively, arguing that the sentencing decision was based on bias, anger, and facts not in the record. Defendant again relies on plain error.

We afford the trial court wide latitude in sentencing and, generally, will reverse a trial court's sentencing decision only if it is an abuse of the judge's discretion. The trial court abuses its discretion when it fails to consider all legally relevant factors, or if the sentence imposed exceeds the limits prescribed by law.

*State v. Bluff,* 2002 UT 66, ¶ 66, 52 P.3d 1210 (quotations and citations omitted).